RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0240p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

       *v.*

THOMAS J. GRECO, JR.,
                *Defendant-Appellant.*

No. 11-3217

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:09-cr-506-1—Kathleen McDonald O'Malley, District Judge.

Decided and Filed: August 20, 2013

Before: DAUGHTREY, KETHLEDGE, and DONALD, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendant Thomas Greco was convicted at the end of a three-week jury trial on charges of bribery and conspiracy to commit bribery involving programs receiving federal funds (18 U.S.C. § 666(a)(1)(B) and § 371), violation of and conspiracy to violate the Hobbs Act (18 U.S.C. § 1951), making false tax returns (26 U.S.C. § 7206(1)), and conspiracy to commit mail fraud (18 U.S.C. § 1349). He was sentenced to 112 months' imprisonment, to be followed by three years of supervised release. Greco now appeals his sentence, contending that the district court: (1) improperly applied a 12-level enhancement based on an erroneous loss

calculation; (2) improperly applied a two-level enhancement for obstruction of justice; and (3) imposed a substantively unreasonable sentence. For the reasons set out below, we find no reversible error, and we therefore affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Greco worked at MetroHealth System, a county-owned health-care provider in Cleveland, Ohio, from 1997 until January 2009, first as a project manager in the maintenance and facilities and construction management departments and later as director of the facilities department. As project manager and, later, facilities director, Greco supervised the independent contractors who worked on MetroHealth construction projects. He also was responsible for selecting the contractors for smaller-scale no-bid maintenance projects and for authorizing payment for their work. Greco used this authority to facilitate a bribery scheme set up by his boss, John Carroll, the Vice-President of Facilities and Institutional Management at MetroHealth, and Nilesh Patel, the Secretary and Vice-President of East-West Construction Company.

The scheme began in 1999, when Patel took Carroll on an all-expense-paid trip to India. In return, Carroll agreed to reimburse the trip's cost by inflating invoices that East-West submitted to MetroHealth for construction work that it performed for the company. Greco helped facilitate the transaction. Thereafter, Carroll – often, although not always – with Greco's assistance, used the same technique to reimburse Patel for other trips, goods, and gift cards. According to Patel's testimony, when Greco realized how easy the bribery scheme was to implement, he also began to ask Patel for bribes. Over the next eight years, Greco received from Patel numerous gift cards, free lunches, trips, and other goods. All of the gifts that Carroll and Greco received from Patel were then reimbursed to East-West from MetroHealth through the use of inflated invoices, change orders, and similar devices.

Patel became anxious about his role in the scheme in March 2007, when he received notice from the IRS that his credit card statements were being reviewed for tax irregularities. The bribery scheme continued, however, until May 2008, when, as part of its investigation into Patel's credit card transactions, the IRS sent a letter to the

MetroHealth CEO that included a list of items, totaling roughly $80,000, that Patel had given to Carroll as part of the scheme. At that point, Carroll was placed on leave from his job at MetroHealth, and Patel stopped providing gifts to both Carroll and Greco. In the meantime, Greco took action to hide his involvement in the scheme. At some point after Carroll was put on leave, Greco met with Patel to return a bag containing jewelry that Patel had given him as part of the scheme. At the meeting, he told Patel that he had gotten rid of some of the other bribes that he had received over the years. He also demanded that Patel write him a letter stating that he had not received any gifts from East-West or from any East-West associate.

Greco's attempts to hide his involvement in the scheme were frustrated by Patel's decision, in August 2008, to contact the government and to confess his participation in the bribery scheme. Patel ultimately agreed to a plea deal with the government, in exchange for a reduced sentence. As part of his cooperation with the government, Patel provided detailed information about the gifts he gave Carroll and Greco in order to ensure their favorable treatment of East-West's construction projects. On the basis of this information and other evidence about Greco's involvement in the scheme, Greco was indicted on one count of conspiring to commit bribery concerning programs receiving federal funds, five counts of outright bribery concerning such programs, one count of violating and one count of conspiring to violate the Hobbs Act, four counts of making and subscribing false tax returns, and one count of conspiring to commit mail fraud. He was convicted on all counts.

The district court sentenced Greco to 112 months in prison, followed by three years of supervised release. At a separate restitution hearing, the court also ordered Greco to pay $994,734.84 in restitution to MetroHealth.

**DISCUSSION**

When reviewing a district court's sentencing order, we examine the court's factual findings for clear error and its sentencing calculation *de novo*. *United States v. Gardner*, 649 F.3d 437, 442 (6th Cir. 2011). Although we will not overturn the district court's factual findings as to loss and restitution unless they are clearly erroneous,

"whether those facts as determined by the district court warrant the application of a particular guideline provision is purely a legal  question and is reviewed *de novo*." *United States v. Garner*, 940 F.2d 172, 174 (6th Cir. 1991).  By contrast, the substantive and procedural reasonableness of a district court's sentence is reviewed under a deferential abuse-of-discretion standard. *United States v. Gray*, 521 F.3d 514, 542 (6th Cir. 2008).

**Loss Calculation**

In bribery cases involving public officials, an enhancement is applicable under the sentencing guidelines when "the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest, exceeded $ 5,000."  USSG § 2C1.1(b)(2).  The level of enhancement is determined by the table in USSG § 2B1.1(b)(1) and increases as the value of the payment, benefit, or loss increases.

In this case, the size of the sentencing enhancement mandated by USSG § 2C1.1(b)(2) was a source of significant dispute between the parties.  The government argued that the enhancement should be calculated on the basis of a loss to the government of $2,842,494 – the net profits that East-West realized from all of the MetroHealth projects that Greco managed.  The probation office suggested that the enhancement should be calculated on the basis of the $628,000 that Patel admitted – in both his plea and his testimony at Greco's trial – providing to Carroll and Greco over the course of the scheme.  Greco contended that the size of the sentencing enhancement should be calculated on the basis of a loss amount of no more than the $70,000 that the government was able to prove Greco received from Patel in exchange for his participation in the bribery scheme.

The district court rejected all three figures.  The court refused to accept the government's loss figure of $2,842,494 for lack of evidence that Greco played any role in, or had any knowledge of, the bid-rigging and inflation of invoices that took place on the larger construction jobs, over which Carroll exercised exclusive authority.  The

district court rejected the Probation Office's loss calculation of $628,000 for lack of evidence other than Patel's testimony to support it, given several reasons to be skeptical of Patel's testimony – including, among other things, the fact that Patel indicated in his testimony that Carroll and Greco each received equal portions of the $628,000, when evidence suggested that the value of the gifts Patel provided to Carroll was significantly more that the value of the gifts that Greco received. Finally, the district court rejected Greco's argument that the sentencing enhancement should be calculated on the basis of the value of the gifts to Greco alone, given Greco's active involvement in a conspiracy involving Carroll as well. The court found that although Greco "could not reasonably have anticipated that Mr. Patel was using this scheme for his own family's payments and his own benefits," he "obviously understood the value of the benefits that Mr. Carroll was receiving" and could, therefore, be held liable for the losses that resulted from actions that Carroll undertook as part of that portion of the conspiracy in which Greco was involved.

The district court instead calculated the sentencing enhancement by adding the value of the bribes that Greco received for his *own* participation in the scheme to the value of the bribes that *Carroll* received for his participation in that portion of the scheme in which Greco was involved. Accordingly, the court added the $70,000 that Greco received from Patel to a "substantial portion" of between $200,000 and $300,000 in bribes that Carroll and Patel confessed to exchanging at Greco's trial.

On the basis of those numbers, the district court concluded that the total value of the bribes paid to Greco and Carroll in connection to that portion of the conspiracy in which Greco played an active role equaled "approximately $200,000." Given the unusual circumstances of this case – where every dollar spent on bribes to Greco and Carroll was ultimately reimbursed to East-West via inflated invoices or change orders – the court concluded that the loss amount was also equal to the total value of both the benefit that East-West received and the loss that MetroHealth suffered from that part of the conspiracy in which Greco was involved. It accordingly imposed a 12-level enhancement to Greco's base offense level. *See* USSG §2B1.1(b)(1)(G) (imposing a

sentence enhancement of 12 levels for losses greater than $200,000 but less than $400,000).

At the subsequent restitution hearing, the district court clarified this conclusion slightly, indicating that what was meant at sentencing was that the total value of the bribes – and therefore, the total value of the benefit to East-West and of the loss to MetroHealth resulting from that part of the conspiracy in which Greco played an active role – was *at least* $200,000, but not more than $400,000. The court denied the necessity of arriving at any more precise a figure of loss or benefit, given that under USSG § 2C1.1(b)(2) all losses greater than $200,000 but less than $400,000 result in the same 12-level sentencing enhancement. Greco now challenges the district court's calculation of his sentencing enhancement on three grounds.

First, he argues that the court erred in relying upon evidence that was not credible – specifically, Patel's and Carroll's testimony regarding the value of the payments that Carroll received in connection to his participation in the scheme. This argument is not persuasive. It is true, as the district court acknowledged during sentencing, that there were reasons to doubt the credibility of some of Patel's and Carroll's testimony. Indeed, Carroll admitted on the stand that he had lied to the government about his involvement in the bribery scheme even after signing a plea agreement that required him to fully disclose his participation. Patel, meanwhile, provided an estimate of loss without any corroboration to support it and conveniently omitted from this loss calculation any mention of the payments that MetroHealth subsequently reimbursed that he apparently spent on himself and his family. Nevertheless, the district court evidently concluded that Carroll's and Patel's testimony was credible as it related to the value of the gifts that Carroll received from Patel. This conclusion is "basically unassailable" on appeal. *United States v. Maliszewski*, 161 F.3d 992, 1020 (6th Cir. 1998) (quoting *United States v. Bingham*, 81 F.3d 617, 630 (6th Cir. 1996) ("the credibility of testimony . . . is an issue that belongs to the finder of fact").

As a result, the court's reliance on Patel's and Carroll's testimony when calculating the sentencing enhancement does not prove that it was based on insufficient

evidence, as Greco charges, even if we assume that their testimony was the *only* evidence upon which the district court relied when making its loss calculation. But, in fact, their testimony was not the only proof in the record. Instead, as the district court indicated at the restitution hearing, when making the loss calculation the court also relied on the testimony of Greco's family members – witnesses whose credibility is not in doubt – as well as the documentary evidence that the government presented during the trial.

Nor can Greco mount a persuasive challenge to the factual conclusions that the district court reached as a consequence of its reliance on the witness testimony and other evidence. Application Note 3(C) to USSG § 2B1.1 provides that sentencing courts "need only make a reasonable estimate of the loss." The application note also indicates that because "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence . . . , the court's loss determination is entitled to appropriate deference." *Id.* In the Sixth Circuit, this rule of deference has been taken to mean that defendants who challenge a district court's loss calculation must show that the court's "evaluation of the loss was not only inaccurate, but was outside the realm of permissible computations." *United States v. Hamilton*, 263 F.3d 645, 654 (6th Cir. 2001) (quoting *United States v. Jackson*, 25 F.3d 327, 330 (6th Cir. 1994)). Greco cannot meet this high standard. In fact, he points to no evidence that suggests the district court's calculation of loss was even inaccurate, let alone "outside the realm of permissible computations." Instead, the documentary evidence – including a list of "things of value" provided to Carroll totaling $298,216.29 – supports the district court's conclusion that the losses due to Carroll's involvement in the scheme equaled between $200,000 and $300,000 and, therefore, that Greco merits a 12-level enhancement under USSG § 2C1.1(b)(2). If anything, the record on appeal suggests that the district court was conservative in its estimation of the loss and benefit that resulted from Greco's active or knowing involvement in the bribery scheme. There is, therefore, no merit to Greco's first argument challenging the court's loss calculation.

Greco's second challenge to the loss calculation is also not persuasive.  To support his claim that the court should have relied exclusively on the verified evidence of Greco's bribes, Greco analogizes this case to one involving spoliation of evidence. He contends that, because the government could have, but did not, produce direct evidence of the losses caused by Greco's participation in the scheme, a similar presumption to that applied in spoliation cases should have applied here – namely, that all missing evidence is presumed to be unfavorable to the party responsible for its loss. *See United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004).  According to Greco, the sentencing court should therefore have presumed that all direct evidence of the losses that MetroHealth suffered, and the benefits that East-West received from Greco's involvement in the bribery scheme, favored Greco and, for that reason, should have disregarded the indirect evidence on which the government relied to prove the amount of Greco's loss.

This argument is unconvincing, for multiple reasons.  First, this is not a spoliation-of-evidence case.  A failure to collect evidence that may or may not have been available for collection is very different from the intentional destruction of evidence that constitutes spoliation.  *Boxley*, 373 F.3d at 762.  In addition, the evidence that Greco claims was "spoiled" was not in the government's control, as it must be in spoliation cases.  Moreover, Greco does not assert, nor is there any evidence to suggest, that the government failed to collect the evidence with the "culpable state of mind" that is a prerequisite for the application of the spoliation presumption.  *See Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553-54 (6th Cir. 2010) ("[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that  the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.") (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).  And, significantly, the district court did *not* rely upon the missing evidence when making its sentencing calculation.

Greco's final challenge to the loss calculation attacks its procedural reasonableness. Greco argues that the district court committed reversible error by failing adequately to explain how it arrived at the conclusion that the benefit that East-West received from that portion of the bribery scheme in which Greco played an active role was "approximately $200,000." This argument is also unpersuasive. Although it is true that a failure to explain the rationale for a sentence can render that sentence procedurally unreasonable, *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011), in this case, the court explained the reasons for its imposition of a 12-level sentencing enhancement in some detail – including the reasoning it employed to determine the figure of "approximately $200,000." At the restitution hearing, the court clarified its finding with respect to the $200,000 figure by indicating that what it found was a loss between $200,000 and $400,000. The court also explained why, and how, it reached that conclusion. As a result, Greco may be correct when he says that there is some mystery in how the court originally arrived at the conclusion that the losses were "approximately $200,000," but there is no mystery as to how the court reached its actual holding.

The sentencing decision in this case cannot be said to be arbitrary or without a basis for meaningful appellate review. *See Gall v. United States*, 552 U.S. 38, 50 (2007) ("After settling on the appropriate sentence, [a district judge] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."). Nor is this a case in which the district court failed to "provide a clear explanation of why it has either accepted or rejected the parties' arguments." *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007). Instead the district court provided an extensive and well-reasoned explanation of its decision. The mere fact that the court was initially somewhat unclear in announcing the loss calculation is not the kind of "significant procedural error" that justifies reversal or remand. *Gall*, 552 U.S. at 51.

**Obstruction-of-Justice Enhancement**

Greco next challenges the district court's decision to impose a two-level sentencing enhancement for obstruction of justice under the guideline providing for such

an enhancement when a defendant has "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense." USSG § 3C1.1. At sentencing, the district court found that Greco obstructed the investigation of the bribery scheme in three ways: by blotting out portions of a sheet (later dubbed the "Monte Carlo sheet" because it was written on a sheet of paper from the Monte Carlo Resort & Casino in Las Vegas) that listed the sums of money paid to Greco and Carroll and the money reimbursed to East-West; by removing bribery-related receipts from the credit card statements that the government seized in a search of Greco's home; and by doing the same with respect to various documents that Greco later turned over in response to a grand jury subpoena.

Greco contends that insufficient evidence exists to support the district court's conclusion that the missing receipts and the alterations on the Monte Carlo sheet demonstrate an attempt to obstruct the investigation. He argues that the government provided no evidence to establish that the receipts were removed in the course of the investigation or that he was responsible for their removal, and also provided no evidence demonstrating that he caused the alterations on the Monte Carlo sheet or did so "willfully." On this basis, he contends that the district court erred when it concluded that a preponderance of the evidence supported the imposition of the obstruction-of-justice enhancement.

We find this argument unpersuasive, given the deference due to the district court's factual determinations. Challenges to a district court's factual findings with respect to obstruction-of-justice sentencing enhancements are reviewed under a clearly-erroneous standard. *United States v. Roberts*, 243 F.3d 235, 237 (6th Cir. 2001). Challenges to a sentencing court's conclusion that these facts constitute obstruction of justice, in contrast, are reviewed *de novo*. *Id.* Here, the only challenges that Greco raises to the court's decision to impose the enhancement are to its factual findings. They must, therefore, be governed by the clearly-erroneous standard.

A district court's decision is clearly erroneous only if this court "is left with the definite and firm conviction that a mistake has been committed." *United States v.*

*Boudreau*, 564 F.3d 431, 435 (6th Cir. 2009) (citations and quotation marks omitted). Greco points to no evidence that would suggest that the sentencing court erred in concluding that Greco was responsible for making the alterations on the Monte Carlo sheet and for the missing receipts. Nor does he provide any evidence or argument as to why the district court was mistaken in concluding that Greco altered the Monte Carlo sheet and removed the receipts for the purpose of obstructing the government's investigation into the bribery scheme.

In fact, both conclusions are supported by evidence, albeit not the direct evidence that Greco demands. The district court's conclusions with respect to the Monte Carlo sheet are supported by Patel's testimony, which the court found, on this point at least, to be credible. Patel testified that he created the Monte Carlo sheet – which he habitually kept in his wallet – in order to keep track of the amount of money he owed Carroll and Greco, or that was owed East-West. Patel also testified that he gave the Monte Carlo sheet to Greco at Greco's insistence in May 2008 and that he did so with the understanding that Greco would destroy it. He also testified that when he handed the sheet over to the defendant, it was without the alterations that it contained when Greco surrendered it to the government later that year.

The fact that the sheet came to be marked up while in Greco's possession supports the district court's conclusion that it was Greco who was responsible for the alterations. Furthermore, the fact that the only purpose of the sheet was to keep track of bribes and that Greco took it from Patel with the expressed intention of destroying it, supports the district court's conclusion that Greco made the marks on the sheet in order to obstruct the government's investigation. Given that Greco provides no alternative explanation for who made the alterations or how they came to be there, and giving the district court's credibility determinations the deference they are due, *see Maliszewski*, 161 F.3d at 1020, there is no reason to conclude that the court clearly erred in the factual conclusions that it reached.

There is, however, somewhat less evidence to support the district court's ruling with respect to the missing receipts. At sentencing, Greco asserted that, prior to the raid

in which the government seized the credit card statements to which many of the missing receipts had been attached, he was not aware that the government was investigating him and, therefore, could not have removed the receipts in order to obstruct that investigation. (Page ID 3142) *See, e.g.*, *United States v. Baggett*, 342 F.3d 536, 541 (6th Cir. 2003) ("[Because t]he literal language of Section 3C1.1 requires that a defendant engage in obstruction of justice 'during the course of the investigation, prosecution, or sentencing of the instant offense of conviction' . . . a defendant who engages in obstructive conduct prior to the investigation, prosecution, or sentencing of the instant offense is not subject to the enhancement."). The government established, however, that at least some of the missing receipts were attached to manuals that Greco gave to the government *after* being made aware of the investigation, by means of a grand jury subpoena. The sentencing court ultimately agreed that, given the evidence demonstrating Greco's meticulous and otherwise "amazingly thorough" record-keeping, the fact that some of the credit card statements and other documents that the government collected from Greco bore marks indicating that their purchase receipts had been removed was sufficient evidence to justify the imposition of the obstruction-of-justice enhancement.

The district court did note that the evidence regarding the missing receipts was sufficiently ambiguous that another court might well have reached a different conclusion with respect to the obstruction-of-justice enhancement. This observation alone, however, is insufficient to conclude that the district court committed clear error in imposing the enhancement. As the Supreme Court has noted, "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). The district court's decision to impose the obstruction-of-justice enhancement does not, therefore, constitute reversible error.

**Substantive Reasonableness**

Greco's final challenge to his sentence attacks its substantive reasonableness. "A sentence may be considered substantively unreasonable when the district court

selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Greco makes two arguments why the sentence is substantively unreasonable.

First, he argues that the sentence is substantively unreasonable because it is based on an excessive, and ultimately arbitrary, loss calculation. For the reasons noted above, this argument has no merit.

Second, Greco argues that the sentence is substantively unreasonable because it is greater than necessary to achieve the statutory sentencing purpose. This is demonstrated, Greco submits, by the fact that his sentence is longer than the sentences that Patel and Carroll received, even though both men played a greater role in the bribery scheme than Greco did. However, Greco's 112-month sentence is below the applicable guidelines range of 151-188 months for someone with his offense level and criminal history. Although it is not impossible to succeed on a substantive-reasonableness challenge to a below-guidelines sentence, defendants who seek to do so bear a heavy burden. *See United States v. Curry*, 536 F.3d 571, 573-574 (6th Cir. 2008) (noting that, because a within-guidelines sentence is presumed to be substantively reasonable, defendants who challenge a below-guidelines sentence on grounds of substantive unreasonableness bear an "even more demanding" burden than do those who challenge a within-guidelines sentence).

In addition, although it is true that Greco played a lesser role in the bribery scheme than did his co-conspirators, this fact alone is not sufficient to establish the substantive unreasonableness of his sentence. As we have noted, "[A] number of factors might result in legitimate co-defendant disparities, including 'differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government.'" *United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009) (quoting *Conatser*, 514 F.3d at 522). For this reason, although 18 U.S.C. § 3553(a)(6) requires a sentencing judge to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty

of similar conduct," courts need consider only *"national* disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between co[-conspirators]." *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (internal citations omitted) (emphasis in original). Thus, district courts are not required under § 3553(a)(6) to take into account disparities among the sentences awarded co-conspirators, although they are also not prohibited from doing so. *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) (noting that the decision to "determine a defendant's sentence in light of a co-defendant's sentence" is a discretionary choice on the part of the district court).

In this case, the district court did consider the disparity among the sentences imposed upon Greco, Carroll, and Patel and expressed some skepticism that the disparities in the sentences that the government requested were justified. The court thus refused to sentence Greco to the 30 years of imprisonment that the government requested. Instead, the district court imposed a below-guidelines sentence in order to take into account Greco's otherwise favorable work record and the unlikelihood of recidivism. The court nevertheless concluded that Greco merited a longer sentence than those that Carroll and Patel received, given his failure to accept responsibility for his crime and the fact that he chose not to cooperate with the government, as both Carroll and Patel did.

Hence, the disparity among the sentences imposed on Greco, Carroll, and Patel is neither arbitrary nor a consequence of the district court's reliance on an impermissible factor. Acceptance of responsibility and the decision to cooperate with the government are legitimate considerations for courts to consider when sentencing. *Carson*, 560 F.3d at 586. Nor did the district court give insufficient or undue weight to any of the § 3553(a) factors. Instead, the court properly considered "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a), the seriousness of the offense, the need for general deterrence, and the other relevant statutory factors. Greco's challenge to the substantive unreasonableness of the sentence

is therefore unavailing, notwithstanding the greater length of his sentence when compared to Carroll's and Patel's.

## CONCLUSION

For the reasons set out above, we AFFIRM the district court's judgment.