NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0566n.06

No. 18-3995

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **FILED** |
| v. | ) | Nov 12, 2019 |
| | ) | DEBORAH S. HUNT, Clerk |
| SLADE A. WILLIAMS, | ) | |
| | ) | ON APPEAL FROM THE |
| Defendant-Appellant. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| | | NORTHERN DISTRICT OF |
| | | OHIO |

Before: MOORE, McKEAGUE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Slade Williams pleaded guilty without a plea agreement to receiving and distributing child pornography. The district court sentenced him to 120 months' imprisonment, well below the original Sentencing Guidelines range of 210 to 240 months. The district court also ordered Williams to pay $10,000 in restitution. Williams now challenges the reasonableness of his sentence and the ordered restitution. We AFFIRM both the sentence and the restitution order.

I.

Pursuant to an investigation in California, agents of the Department of Homeland Security seized the cellular phone of Angel Hernandez because it had been used to distribute child pornography. Forensic examination of Hernandez's phone revealed that, via the mobile application Kik Messenger, he had exchanged fifty-three files containing child pornography with someone using the username "The_Blader25." Upon further investigation, federal agents

discovered that Williams operated under the "The_Blader25" username. Williams received twenty-nine files from Hernandez (eighteen images and eleven videos) and sent twenty-four files (sixteen images and eight videos). In addition to the files, the agents also discovered twenty-seven pages "of conversation . . . between Williams and Hernandez."

Williams was indicted for receiving and distributing child pornography in violation of 18 U.S.C. § 2252(a)(2). After his arrest, Williams "admitted to previously obtaining child pornography." He pleaded guilty to the charges without a plea agreement. The presentence investigation report (PSR) calculated Williams' total offense level at thirty-seven, which resulted in a Guidelines range of 210 to 240 months.

At sentencing, the district court and the parties agreed with the PSR's total offense level calculation. The district court noted that Williams' base offense level was twenty-two, but the Guidelines called for several enhancements: a two-level increase because the pornographic images at issue depicted prepubescent minors; a five-level increase because Williams distributed child pornography in exchange for valuable consideration (in this case, more child pornography); a four-level increase because the images depicted sadistic, masochistic, or sexually abusive conduct; a five-level increase because Williams possessed more than 600 images[1] of child pornography; and finally, a two-level increase because Williams used a computer to receive and distribute those images. With those enhancements, the Guidelines called for an adjusted offense level of forty. The district court then reduced Williams offense level by three levels for acceptance of responsibility, arriving at the PSR's calculated total offense level of thirty-seven. But the district

---

[1] Under the Guidelines, a video counts as seventy-five images. U.S.S.G. § 2G2.2, cmt. n.6(B)(ii). Because Williams possessed or exchanged nineteen videos with Hernandez, he possessed more than 600 images.

court declined to credit the two-level increase for "the use of the computer" to carry out the offense because "every single case [he had] encountered as a [j]udge in 20 years involved the use of a computer." With that reduction, Williams' Guidelines range was 168 to 210 months (14 to 17.5 years).

Williams argued that the district court should exercise its discretion to vary downward from the Guidelines and instead impose the statutory minimum sentence of five years, *see* 18 U.S.C. § 2252(a)(2), because he was a first-time offender, "has been deaf since birth," and "has a very close and supportive relationship" with his family. The district court disagreed that five years was the appropriate sentence but agreed that even a sentence at the bottom of the Guidelines range— fourteen years—was too long. Instead, the district court imposed a sentence of ten years with five years of supervised release. The district court also ordered Williams to pay $10,000 in restitution to "Violet,"[2] one of the children depicted in at least two videos that Williams possessed.

Williams then timely appealed, challenging both the reasonableness of his sentence and the district court's restitution order.

## II.

"A criminal sentence must be both procedurally and substantively reasonable." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). A sentence is procedurally reasonable if the district court "properly calculate[d] the guidelines range, treat[ed] that range as advisory, consider[ed] the sentencing factors in 18 U.S.C. § 3553(a), refrain[ed] from considering impermissible factors, select[ed] the sentence based on facts that are not clearly erroneous, and adequately explain[ed] why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). A challenge to substantive reasonableness focuses on the length of the sentence,

---

[2] "Violet," as the pseudonym of the victim, will always appear in quotes.

*Parrish*, 915 F.3d at 1047, particularly whether "the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual," *id.* (quoting *Rayyan*, 885 F.3d at 442). "We review claims of both procedural and substantive unreasonableness for an abuse of discretion," while reviewing the district court's underlying factual findings for clear error and its legal conclusions de novo. *Id.*

Williams makes no objection to the trial court's calculation of the Guidelines range—168 to 210 months in prison. Instead, Williams' challenges to both the procedural and substantive reasonableness of his sentence center around the district court's selection of the ultimate sentence. That sentence varied downward from the Guidelines range, resulting in a prison sentence of 120 months.

*Procedural Reasonableness.* In deciding whether, and how much, to vary downward from the Guidelines range, the trial court considered the factors required by 18 U.S.C. § 3553(a). The court considered, for example, testimony from both Williams and his mother, letters Williams' family sent on his behalf, Williams' disability, and his lack of prior criminal history. It also considered the nature of the crime—receipt and distribution of "images that brutalize children and torment them . . . so long as the[] images" exist, images that revictimize children every "time they're viewed, downloaded, or shared." He also noted that the Guidelines ranges for this conduct are "pitched very, very high," in part to deter producers and dampen demand. In the end, the district court determined the need to "strike a balance" between the competing considerations.

As one factor in this balance, the district court expressed concern that Williams would be a danger to children. Williams argues that that determination was clearly erroneous, rendering his sentence procedurally unreasonable. In concluding that Williams could be a danger to children, the district court relied on a text exchange between Williams and Hernandez, which we reluctantly

recite here. After Hernandez and Williams had initially exchanged pornographic images, Hernandez expressed his desire to perform a sex act on the child in the image sent by Williams; the following conversation ensued:

> Williams: Me too . . . make me really wish I have a daughter of my own to f*** ;)
>
> Hernandez: Yes that would prefect [sic] to have your own little f*** toy
>
> Williams: Exactly. A perfect family . . . my son f*** his mother while I f*** my own daughter ;) And I would let my son f*** my daughter ;) But I will take my daughter virginity first and impregnate her first ;) my wife would take my son's virginity and let him impregnate her ;) that would be perfect family for me.
>
> Hernandez: That would be amazing to watch it all happen
>
> Williams: Oh yea . . . I would record it all . . .

Williams argued at sentencing that he did not mean what he said. His counsel argued that Williams was just trying to "puff the goods," to make himself look more credible to Hernandez. Williams, through his interpreter, agreed, stating that he was "just trying to make a connection," by which he meant that he was "just trying to get more information in tradings [sic] from [Hernandez], not actually do anything." The court listened to these explanations. It considered the fact that there was no evidence that Williams had previously carried out any sexual violence toward children and that his sisters had vouched for his treatment of children. But the court still concluded Williams presented a danger to children:

> I've got his own words [in the chat]. Mr. Williams has given an explanation, but if I don't credit that explanation, I'm left with his own words, which has only one explanation that I can discern or has a—a lot of implications or inferences, but there's one pretty direct one . . . .

We cannot say that the district court clearly erred. The district court's factual findings are given considerable deference—we can only overturn them if the record leaves us with a "definite and firm conviction" that they were mistaken. *See United States v. Greco*, 734 F.3d 441, 449 (6th Cir. 2013) (quoting *United States v. Boudreau*, 564 F.3d 431, 435 (6th Cir. 2009)). No definite and firm conviction exists here, given the "graphic and vile nature" of the images and videos

Williams possessed (as described by the district court) and the abhorrent nature of the acts Williams said he would like to commit. The district court heard, but was not convinced by, Williams' contrary explanation for the statements. We cannot say that the district court based his sentence on a clearly erroneous fact.[3]

*Substantive Reasonableness*. Williams next argues that his claim is substantively unreasonable—"that his sentence was longer than it should have been." *United States v. Pyles,* 904 F.3d 422, 426 (6th Cir. 2018). "That is a difficult claim to support because we give considerable deference to a district court's decision about the appropriate length of a sentence." *Id.* (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). When, as here, the district court has varied *downward* from the Guidelines range, the defendant must overcome an "even more demanding" burden to establish that his sentence was not sufficiently lenient. *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008); *see also United States v Greco*, 734 F.3d 441, 450 (6th Cir. 2013) (describing the defendant's burden when challenging a below-Guidelines sentence as "heavy"). Williams claims his sentence is substantively unreasonable because the district court selected a sentence that was "double[]the[]minimum" by failing "to fully consider . . . strongly mitigating factors" and giving "grossly disproportionate and unreasonable weight to the lewd fantasy text-chat." This argument fails for two reasons.

---

[3] For the first time on appeal, Williams argues that "the empirical literature . . . generally concludes that there is little—if any—evidence of a direct correlation between viewing child pornography and the viewer's commission of 'contact' sexual offenses." Appellant Br. at 24 (quoting *United States v. Marshall*, 870 F. Supp. 2d 489, 492 (N.D. Ohio 2012)). We decline to opine in the first instance on evidence not presented to the district court. *See Glossip v. Gross*, 135 S. Ct. 2726, 2740–42 (2015) (conducting clear error review "based on [the] evidence presented to the [district] court"); *cf. Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("[A] federal appellate court does not consider an issue not passed upon below."). We note, however, that the government did present the district court with academic literature of its own, which purports to cast doubt on these conclusions. We express no view on the validity of either position.

First, Williams' argument misunderstands the sentencing process. Williams repeatedly asserts that his sentence is "too high," and therefore substantively unreasonable, because the district court inappropriately "increased" or "doubled" his sentence from the statutory minimum of five years to ten. But a sentencing court does not begin with the minimum sentence and work up; it starts with the Guidelines range. *Gall*, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . [T]he Guidelines should be the starting point and the initial benchmark."). The district court did not increase Williams' sentence when it imposed a ten-year sentence; it varied *downward* from the Guidelines range. R. 31, PageID 332 (the district court explaining that because the applicable Guidelines range was 168 to 210 months, "that's where I'm starting").

Second, we cannot say that the district court abused its discretion by failing to adequately consider mitigating factors or by placing too much weight on Williams' text-chat with Hernandez. The sentencing transcript shows that the district court adequately considered mitigating factors. The district court heard testimony from Williams' mother and from Williams himself, and when it made its sentencing decision, it referenced Williams' "supportive family" and the letters they wrote on his behalf, his "disability," and his lack of prior criminal history.

But the district court acknowledged that there were also factors counseling in favor of a longer sentence, noting in particular three reasons for the 120-month sentence: (1) the "trading and exchanging [of] images," (2) the "number of images and the[ir] graphic and vile nature," and (3) the "grave and real concern" that Williams would be a danger to children created by the "clear and graphic and repulsive" fantasies he expressed. The district court did not give preeminence to any one of these reasons but explained that it had "to weigh all this"—Williams' arguments favoring leniency *and* the factors supporting a more severe sentence—and "strike a balance." The

district court did just that, varying downward substantially from the Guidelines range, but stopping short of the statutory minimum.

We cannot conclude that the district court abused its discretion by striking this balance. Williams has not carried his "demanding" burden of establishing that his below-Guidelines sentence is substantively unreasonable. *See Curry*, 536 F.3d at 573.

III.

Williams next challenges the district court's restitution order. In child pornography cases, the sentencing court determines the amount of restitution by considering "the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim" and then ordering restitution "in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses." 18 U.S.C. § 2259(b)(2)(A)–(B). A defendant may only be ordered to pay restitution "to the extent the defendant's offense proximately caused a victim's losses." *Paroline v. United States*, 572 U.S. 434, 448 (2014). The Government bears "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e).

The district court ordered Williams to pay $10,000 in restitution to "Violet," one of the children depicted in a video that Hernandez sent Williams, a longer version of which Williams claimed he already had. Before the district court, Williams objected to the amount of restitution, arguing that he could not pay it and questioning "where the $10,000 number emanates from." On appeal, Williams makes two arguments: first, that the government failed to establish that Williams possessed images of "Violet,"[4] and second, that $10,000 is excessive.

---

[4] Because Williams did not argue below that the government failed to provide evidence that Williams possessed or distributed any images of "Violet," the government asks us to apply plain error review. Williams responds that his objections at the sentencing hearing "fully preserve[d]"

Williams contends that the government did not "present evidence that [Williams] possessed images of ['Violet']." In support, he points to the restitution request, which states, "Violet is not informed as to whether [Williams] distributed, either actively or passively, any of her images." But the request refers to distribution, not possession, either of which is sufficient to support an award of restitution. 18 U.S.C. §§ 2259(b)(2), (c)(3), 2252(a)(4)(B). And, in any event, that request was submitted in January 2018, five months before Williams pleaded guilty and nine months before the PSR was compiled. In the intervening months, the government's sentencing memorandum and the PSR made the connection between a video of "Violet" described in the restitution request and the video Williams received from Hernandez. Thus, the record indicates that he possessed a video of "Violet."

Williams next argues that the amount of restitution is excessive. The Supreme Court described the process by which sentencing courts determine the amount of restitution as one "involv[ing] the use of discretion and sound judgment," not "a precise mathematical inquiry." *Paroline*, 572 U.S. at 459. The Court did not "prescribe a precise algorithm for determining the proper restitution amount" because doing so "would unduly constrain the decisionmakers closest to the facts of any given case." *Id.* at 459–60. Thus, we review the amount of restitution awarded for abuse of discretion. *United States v. Evers*, 669 F.3d 645, 654 (6th Cir. 2012). "An abuse of discretion occurs when the reviewing court is left with the definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Batti*, 631 F.3d 371, 379 (6th Cir. 2011) (quoting *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008)).

---

this argument. The result is the same under either standard, so we do not address the preservation issue.

The Supreme Court has offered "a variety of factors district courts might consider" when exercising this discretion, including:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Paroline*, 572 U.S. at 459–60. "These factors need not be converted into a rigid formula"; rather, they should "serve as rough guideposts for determining an amount that fits the offense." *Id.* at 460.

In "Violet's" restitution request, she claimed her total losses amount to $794,118.35, and she requested "an apportioned amount of restitution for documented general losses of $10,000.00 together with attorneys' fees of $1,500." Her restitution request laid out the *Paroline* factors and analyzed them. After reviewing the request's analysis and considering the parties' arguments, the district court agreed to order the $10,000 in restitution, determining that amount to be "appropriate, given the overall harm" and "necessary" to allow "Violet" to "get on with [her] li[fe]."

Williams now argues that "[t]o the extent [the restitution award was] based on the submission by 'Violet's' attorney," it "was based on speculation, not facts." But the restitution request was attached to the PSR, and Williams did not make a meaningful objection in this vein below. Although Williams did question the provenance of "the $10,000 number," he also acknowledged that he had reviewed the restitution request, which provided an explanation for its restitution calculation. If Williams perceived any particular defect in "Violet's" calculations, he did not alert the district court to that deficiency.

We therefore conclude that the district court did not abuse its "discretion and sound judgment" by ordering Williams to pay $10,000 in restitution. *See Paroline*, 572 U.S. at 459. As we noted, there is no "precise algorithm for determining the proper restitution amount." *Id.* at 459–60. And neither the district court's approach nor its ultimate determination has "left [us] with the definite and firm conviction that the [district] court committed a clear error of judgment." *See Batti*, 631 F.3d at 379 (quoting *Hunt*, 521 F.3d at 648). We affirm the restitution order.

\* \* \*

For the reasons stated, we AFFIRM both Williams' sentence and the district court's restitution order.