NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0492n.06

No. 24-2059

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Oct 22, 2025

KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIAM LEE SUGGS, IV,

Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

OPINION

Before: GRIFFIN, THAPAR, and MATHIS, Circuit Judges.

GRIFFIN, Circuit Judge.

An investigation into local gang violence in Benton Harbor, Michigan led law enforcement to defendant William Lee Suggs, IV's house. While executing a search warrant, they found a firearm. The government charged him under 18 U.S.C. § 922(g)(1) as a felon in possession of a firearm. Suggs pleaded guilty, reserving the right to appeal the district court's denial of his as-applied challenge to the statute. He now appeals that order, in addition to his sentence. We affirm.

I.

Law enforcement executed a search warrant at Suggs's house, where they found a safe. Inside, officers found a firearm. Suggs told them that he had put the gun there. Based on Suggs's multiple prior felony convictions, Suggs was indicted in federal court for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Suggs moved to dismiss the indictment, contending that § 922(g)(1), as applied to him, violates the Second Amendment. The district court denied the motion. Suggs then conditionally

pleaded guilty. After calculating the advisory guidelines to range as 46 to 57 months, the district court sentenced Suggs to 45 months in prison and three years of supervised release. He appeals the district court order denying his motion to dismiss and the substantive reasonableness of his sentence.

## II.

### A.

We review de novo the denial of a motion to dismiss challenging the constitutionality of a federal statute. *United States v. Gailes*, 118 F.4th 822, 824 (6th Cir. 2024).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. This language guarantees an individual the "right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). But the right "is not unlimited." *Id.* at 626. Indeed, it is afforded only to "ordinary, law-abiding citizens." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 9 (2022). Precedent does not cast doubt on "longstanding prohibitions on the possession of firearms by felons"—they remain "presumptively lawful." *Id.* at 81 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626, 627 n.26). And history confirms that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *United States v. Rahimi*, 602 U.S. 680, 698 (2024) (rejecting a facial challenge to § 922(g)(8), which bars persons subject to domestic-violence restraining orders from possessing firearms).

Following *Bruen* and *Rahimi*, we considered the constitutionality of § 922(g)(1), which bars felons from possessing firearms. *United States v. Williams*, 113 F.4th 637, 643 (6th Cir. 2024). We concluded that felons are among "the people" the Second Amendment protects, and

that "governments may use class-based legislation to disarm people it believes are dangerous, so long as members of that class have an opportunity to show they" are not. *Id.* at 649, 661–62. When considering whether a felon is dangerous, courts "should make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction," and "evaluate a defendant's entire criminal record." *Id.* at 663. In doing so, we have separated types of convictions into three categories, each differing in terms of how probative they are of dangerousness. *Id.*

The first category is "crimes against the person," like murder, rape, assault, or robbery. *Id.* at 658. Crimes "in this category speak directly to whether an individual is dangerous." *Id.* The second category of crimes pose a large threat of danger and risk to others or the community, but do not involve "strictly crimes against the person." *Id.* at 659. This category includes drug trafficking and burglary. *Id.* The third category of crimes often cause no physical harm to others or to the community. *Id.* Two third-category crimes include mail fraud or making false statements. *Id.* Most of these crimes do not make a person dangerous. *Id.*

B.

Suggs argues that he has shown that he is not dangerous, namely because his criminal history falls into the third category of crimes. Based on the details of his present conviction and his criminal record, we disagree.

Beginning with Suggs's present offense, here are the specific facts. As part of its investigation into gang violence in Benton Harbor, law enforcement reviewed messages between Suggs (a member of the 36 gang) and a member of the 00 gang. The messages revealed that Suggs lent the 00 member a firearm for protection amid the ongoing gang war between the 36 gang, the

00 gang, and the Chase the Bag (CTB) gang.[1] Then, after executing a search warrant at Suggs's home, law enforcement found a firearm in his safe. Additionally, officers reviewed Suggs's iPhone, which detailed marijuana and firearms sales. Suggs also told them that he buys and sells "guns and stuff" all the time and sold at least three guns before.

Taken together, these facts show that Suggs is a gang member who loans guns to other gang members, illegally sells weapons, and traffics drugs. This behavior undoubtedly puts others at risk and creates the possibility of violence. Gang membership correlates with significantly elevated rates of violence. Terence P. Thornberry et al., *Reducing Crime Among Youth at Risk for Gang Involvement*, 17 Criminology & Pub. Pol'y 953, 955 (2018). And by illegally providing weapons to other gang members, Suggs bypassed federal safeguards designed to "prevent guns from falling into the wrong hands." *Abramski v. United States*, 573 U.S. 169, 172 (2014). Suggs's gang and rival gangs regularly shot at each other. His residence was shot at three times. One of those times, a young girl was shot. This history makes Suggs dangerous.

Suggs's criminal record bolsters this conclusion. Turning to his first conviction, police responded to reports of gunfire and stopped a car leaving the scene. Suggs was the driver and sole occupant. Officers found a loaded weapon resting on the driver's side floorboard, which he was not entitled to carry concealed. Gunshots and attempted police evasion pose an inherent risk to others and the community. *United States v. Lightning*, 835 F. App'x 38, 48 (6th Cir. 2020) (Nalbandian, J., dissenting). And unlawfully possessing loaded and concealed weapons may

---

[1] To give a few examples: On June 28, 2023, a CTB gang member was shot and killed by suspected 00 members; on October 7, 2023, CTB members fired two dozen rounds at a gathering with 00 members, and in a separate event that same day, a 00 member returned fire towards a CTB member, resulting in a 17 year-old's death; on December 4, 2023, three members of 00 shot at a CTB member's home; on December 5, 2023, a CTB member shot at a car driven by a 00 member's mother; and on December 23, 2023, a 00 member shot a mother of a CTB member in the leg.

present heightened risks of danger—especially in combination with drug trafficking and gang activity. *Cf. Heller*, 554 U.S. at 626 (noting how several 19th-century courts "held that prohibitions on carrying concealed weapons were lawful"); *Williams*, 113 F.4th at 662–63.

Two months after that arrest, and three days after entering his guilty plea for unlawfully carrying a concealed weapon, Suggs was again arrested for carrying a concealed weapon without permit, and for being a felon in possession of a firearm and ammunition. This time, there were three loaded weapons in the vehicle. Again, loaded and concealed weapons are dangerous in the "wrong hands"—like the hands of a person federally banned from possessing firearms. *Abramski*, 573 U.S. at 172. And "multiple convictions for unlawfully possessing firearms" show that Suggs has a dangerous "propensity for having weapons with him when he shouldn't." *United States v. White*, 2025 WL 2060869, at *3 (6th Cir. July 23, 2025) (quoting *United States v. Poe*, 2025 WL 1342340, at *3 (6th Cir. May 8, 2025)).

Then police caught Suggs violating the terms of his probation while trying to locate one of Suggs's associates on felony charges. They found Suggs in a car with a loaded gun on the floor and methamphetamine in the vehicle. This occurred in Michigan, where he was not authorized to be under the terms of his Indiana probation. His probation evaluation plan explained that "he places himself around negative people who possess weapons and drugs late at night." And "drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993).

In sum, Suggs's present conviction and repeated firearm offenses demonstrate that he poses a "significant threat of danger." *Williams*, 113 F.4th at 659. Thus, § 922(g)(1) as applied to Suggs does not violate the Second Amendment.

III.

A.

We review a challenge to the substantive reasonableness of a sentence for abuse of discretion. *United States v. Robinson*, 892 F.3d 209, 212 (6th Cir. 2018). A district court abuses its discretion when it "relies on clearly erroneous findings of fact," "improperly applies the law," uses the wrong legal standard, or commits a clear error of judgment. *United States v. Hale*, 127 F.4th 638, 640 (6th Cir. 2025).

In crafting a sentence, the district court considers the factors provided in 18 U.S.C. § 3553(a). These factors include, among others, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed to reflect the seriousness of the offense." *Id.* § 3553(a)(1)–(2)(A) (citation modified). The sentence should also "promote respect for the rule of law," "provide just punishment for the offense," "protect the public," and serve as a deterrent. *Id.* § 3553(a)(2)(A)–(C). And the district court should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6).

A sentence is substantively unreasonable when it is "too long" because "the court placed too much weight on some of the § 3553(a) factors and too little on others." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). When a sentence is below the Guidelines range, we afford it a rebuttable presumption of reasonableness. *United States v. Smith-Kilpatrick*, 942 F.3d 734, 746 (6th Cir. 2019).

B.

Suggs's initial Presentence Investigation Report (PSR) calculated a Guidelines range of 57 to 71 months of imprisonment, based on Suggs possessing three firearms. But at sentencing, Suggs

and the United States agreed that the offense involved only two firearms—the one found in his safe and the one he loaned the 00 member. That lowered the Guidelines range to 46 to 57 months, and the district court sentenced Suggs to 45 months.

Suggs contends his sentence is substantively unreasonable because it is "a departure from the requirement that a sentence be sufficient, but not greater than necessary." But a full review of the sentencing record shows the district court appropriately analyzed the pertinent § 3553(a) factors in crafting a below-Guidelines sentence.

First, the district court reviewed the indictment, the written plea agreement, the plea hearing, the final PSR, Suggs's motion for a variance, his supplemental motion for a variance, the sentencing memorandum, and character reference letters. After considering those documents, the district court thoroughly discussed Suggs's mitigating factors. He grew up without a father in a violent area. He immediately accepted responsibility for his actions, expressed "insightfulness in his situation," and set "goals for himself." And the district court noted that Suggs does not abuse substances, graduated from high school, and was not stealing or engaging in domestic violence. Finally, the district court acknowledged Suggs's youth (21 at the time of the offense), and that, at his age, "people's frontal lobes are not fully developed and so it's easier to take risks and not think of the consequences."

The district court then balanced these mitigating factors against the seriousness and dangerousness of the instant offense and his criminal history. He had committed several firearms violations in succession. He retrofitted a rifle and loaned out a firearm to another person, a person he knew was in a gang. Suggs also participated in gang activity. These actions risked Suggs's life and the lives of others.

The district court next inquired about the relevant national sentencing data from the Judicial Sentencing Information Network (JSIN). Data showed that, for defendants with the same base offense level, total offense level, and criminal history category, the average sentence was 45 months. The district court, after assessing all the information before it, then sentenced Suggs to 45 months. Although Suggs argues that the district court "appears to have overly based" Suggs's sentence on JSIN data, he offers no affirmative support for that contention.

Regardless, his assertion is contrary to the record. The district court considered the § 3553(a) factors in detail and then imposed a reasonable, individualized sentence. And Suggs has not met his "heavy burden" to rebut the reasonableness of his below-Guidelines sentence. *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013). His sentence is not unreasonable simply because he thinks the district court should have balanced the factors differently. *See United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013).

IV.

For these reasons, we affirm the judgment of the district court.