NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0394n.06

No. 22-5370

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 24, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| MONTREZ DUNCAN, | ) ) | COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| Defendant – Appellant. | ) ) | |
|  | ) ) | OPINION |

Before: WHITE, THAPAR, and NALBANDIAN, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** After the district court vacated Montrez Duncan's conviction under 18 U.S.C. § 924(c)(1)(A) and (2), it adjusted his sentences on the remaining counts and resentenced him to a total term equal in length to his original sentence. Duncan appeals and we AFFIRM.

I.

In 2012, Duncan believed that he and his girlfriend would need money for attorneys, so he planned to rob drug dealer Derek Odom. Duncan enlisted the help of Jovonte Fitzgerald and several others. Duncan, Fitzgerald, and others in this group surveilled Odom's home and followed him in a van as he drove to meet buyers. When Odom returned home, Duncan, Fitzgerald, and Raymond Wilson ran into Odom's garage while Victor Jones waited outside in the van. With guns drawn, the three men ordered Odom into the house.

Inside, Duncan took the lead, giving out instructions and "holding Odom down at gunpoint" while Fitzgerald and Wilson collected money and drugs. R. 258, PID 1355-56. Because

Odom knew where there was more money, Duncan forced him into the van with him and Jones. Fitzgerald and Wilson followed, driving Odom's car. They stopped at a shopping center, where Duncan forced Odom to call a buyer and his cousin to bring money and drugs.

Later, Duncan developed a plan to "get rid of Odom" by placing him in the trunk of his car, stabbing him, and lighting the car on fire. The group drove to a field, where Fitzgerald and Wilson soaked Odom's car with gasoline. Odom ran when Duncan cut his restraints to put him in the trunk. Duncan said, "Shoot," and Fitzgerald fired, hitting Odom in the buttocks. Odom played dead but ran again and escaped when Duncan said, "No, cuz, you got to shoot him more than that." R. 257, PID 1222. The group drove away in the van and later met in a motel, where Duncan gave his mother approximately $20,000 for lawyer fees. The group split the remaining drugs and money among themselves and a few others.

In April 2014, Duncan, Fitzgerald, Jones, and Wilson were each charged with Hobbs Act robbery conspiracy in violation of 18 U.S.C. §§ 1951-52 (Count 1), Hobbs Act robbery in violation of §§ 1951-52 (Count 2), and using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of § 924(c)(1)(A) and (2) (Count 3). A jury convicted Duncan on all counts.

Counts 1 and 2 each carried twenty-year maximum prison terms, and Count 3 carried a ten-year mandatory minimum term. Based on a total offense level of 33 and a category-VI criminal history, Duncan's Guidelines range was 360 months to life imprisonment. At the time of Duncan's initial sentencing, he was serving two state sentences in Tennessee. The court weighed Duncan's lengthy criminal history, lack of respect for the law, and threat to public safety against his eighth-grade education, limited work history, difficult upbringing, and intellectual disability. The district court also considered its upcoming sentencing of Fitzgerald, who faced the same charges as

2

Duncan but who had pleaded guilty pursuant to a plea and sentence agreement. Duncan's counsel raised a disparity concern at Duncan's initial sentencing, and the court noted several similarities between Duncan and Fitzgerald: career-offender status; involvement in the Hobbs Act conspiracy; lack of male role models growing up; status serving state sentences; abuse of drugs and alcohol from an early age; and early first offenses.[1] The court also observed that Fitzgerald shot Odom but that Duncan did the organizing. After reviewing these comparisons, the court stated, "So there are a lot of similarities between you and Mr. Fitzgerald that the [c]ourt can't ignore in determining what's an appropriate sentence and does go to that factor of avoiding a disparity." R. 409, PID 2462. The court sentenced Duncan to concurrent 180-month sentences for Counts 1 and 2 (the Hobbs Act counts), to run concurrently with the state sentences, and a consecutive 120-month sentence for Count 3 (the § 924(c) count), yielding a 300-month total sentence that was 60 months below the Guidelines range.

After *United States v. Davis*, 139 S. Ct. 2319 (2019) was decided, the district court granted Duncan's § 2255 motion to vacate the § 924(c) conviction, creating the need for resentencing. A hearing was scheduled for October 2021, but on the morning of the hearing the district court learned that Duncan's drug-related state sentence had expired in September 2021 and that he had recently been paroled on the state reckless-homicide sentence. The court noted that "[a] number of arguments [had] been raised," including the issue of concurrent or consecutive sentences. R. 471, PID 2954. The court postponed resentencing, ordered a new presentence report, and asked the parties for briefing on whether the two Hobbs Act sentences should run concurrently or

---

[1] At that time, Fitzgerald had not yet been sentenced, but the court knew of his agreement to a 300-month sentence pursuant to Rule 11(c)(1)(C). Fitzgerald later received his agreed-to 300-month sentence, reduced by 76 months for time served for a related state sentence.

consecutively. To clarify, the court reiterated that it wanted defense counsel and the government "to file new briefs on their respective positions on the 3553 factors." *Id.* at 2958.

Resentencing took place in April 2022. The court noted that it had reviewed both parties' sentencing positions and memoranda, its notes on the trial[2] and from the initial sentencing hearing, and the updated presentence report. The court calculated Duncan's offense level and added a seven-level firearm enhancement under U.S.S.G. § 2B3.1(b)(2)(A), which had not been scored at the initial sentencing due to concerns about double counting. *See* U.S.S.G. § 2K2.4 cmt. n.4. With a new total offense level of 40 and a category-VI criminal history, the Guidelines range was again 360 months to life, but now with a 480-month cap because of the Hobbs Act statutory maximums. Defense counsel did not object to the range as calculated but argued for leniency based on Duncan's personal history. Defense counsel stressed that Duncan "shouldn't be in a worse situation today" because of the § 924(c) vacatur and that the court "ought to leave [the Hobbs Act sentence] the way it was"—concurrent 180-month terms. R. 473, PID 2977, 2979.

The court rejected Duncan's arguments and imposed consecutive 200-month and 100-month sentences for Counts 1 and 2, respectively, to run concurrently with the state sentences, yielding a total below-Guidelines sentence of 300 months, the same as before Count 3 was vacated. In reaching this decision, the district court weighed the same factors as before, with the addition of evidence that Duncan had been subject to several disciplinary actions since starting his federal sentence.

After the court announced its sentence, defense counsel asked it to clarify how the federal sentence would run with Duncan's state sentence. The court answered that Counts 1 and 2 would

---

[2] The sentencing judge did not preside over Duncan's trial. Presumably these were notes the court took on its review of the trial transcript before the initial sentencing.

"run consecutive, all to run concurrent with" the state sentence, and defense counsel replied, "All right." *Id.* at PID 2989. When the court asked for any objections, the government responded first and clarified the sentence, then voiced no objection. Defense counsel then said, "It effectively is the same sentence as before, just fashioned a different way," and the court replied, "It is. Because I'm sentencing the same behavior." *Id.* at 2995.

For Fitzgerald's resentencing, the parties jointly recommended and the court imposed concurrent terms of 180 months, with a 76-month reduction under U.S.S.G. § 5G1.3(b) for an undischarged state sentence for related conduct, yielding a total term of 104 months. This was 120 months lower than Duncan's new sentence, not accounting for the reduction.

Duncan now appeals, challenging his new sentence on procedural-reasonableness, substantive-reasonableness, and vindictiveness grounds.

## II.

We review the reasonableness of a sentence for an abuse of discretion, *Gall v. United States*, 552 U.S. 38, 51 (2007), but review procedural reasonableness only for plain error if the defendant failed to preserve an issue after being asked for any objections under *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). We review the application of the Sentencing Guidelines de novo and findings of fact for clear error. *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009).

Sentences are procedurally unreasonable "if the district court fails to calculate (or improperly calculates) the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *Id.* And sentences are "substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider

relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Mahbub*, 818 F.3d 213, 232 (6th Cir. 2016) (quoting *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010)). Sentences below the Guidelines are presumed substantively reasonable. *United States v. Smith-Kilpatrick*, 942 F.3d 734, 747 (6th Cir. 2019).

### III.

Duncan challenges the procedural reasonableness of his sentence on three bases: the decision to run his sentences consecutively; the application of the organizer enhancement; and the sentencing disparity between him and co-defendant Fitzgerald.

### A.

Duncan first argues that his sentence is procedurally unreasonable because the district court failed to adequately explain its decision to impose consecutive sentences for Counts 1 and 2. Although the government asserts this claim is unpreserved and subject to plain-error review, Duncan's claim fails even if reviewed for abuse of discretion.

A district court commits procedural error by "failing to adequately explain the chosen sentence." *Gall*, 552 U.S.at 51. "When deciding to impose consecutive sentences, . . . a district court must indicate on the record its rationale, either expressly or by reference to a discussion of relevant considerations contained elsewhere." *United States v. Cochrane*, 702 F.3d 334, 346 (6th Cir. 2012), *abrogated on other grounds by Rodrigues v. United States*, 575 U.S. 348 (2015).

Under 18 U.S.C. § 3584(a), "[m]ultiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively" and "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Under § 3584(b), in deciding whether to impose concurrent or consecutive terms of imprisonment, a district court

6

"shall consider, as to each offense . . . the factors set forth in section 3553(a)." Relatedly, § 5G1.2(d) of the Sentencing Guidelines instructs:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment,[3] then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

"[A] sentence consistent with [§ 5G1.2(d)] carries a badge of reasonableness we are bound to consider." *United States v. Eversole*, 487 F.3d 1024, 1033 (6th Cir. 2007).

A district court may "intertwine[]" its analysis of the § 3553(a) factors with its decision to impose consecutive sentences. *United States v. King*, 914 F.3d 1021, 1026 (6th Cir. 2019) (quoting *United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011)). It would be "repetitious and unwarranted" to require a separate analysis. *United States v. Berry*, 565 F.3d 332, 336 (6th Cir. 2009). In *King*, the district court discussed several § 3553(a) factors, announced King's terms of imprisonment, and then discussed the sentence's sufficiency, saying in part: "So the overall sentence is going to be 36 months custody. . . . I'm confident that this sentence meets the requirements of 3553(a)." *King*, 914 F.3d at 1026. We found this explanation made "adequately clear that the judge believed an aggregate [36]-month sentence satisfied the goals of § 3553(a)" and "demonstrate[d] that the judge's discussion of the length of King's aggregate sentence was,

---

[3] The Guideline application notes explain that "total punishment" means the "combined length of the sentences," which "is determined by the court after determining the adjusted combined offense level and the Criminal History Category and determining the defendant's guideline range on the Sentencing Table." U.S.S.G. § 5G1.2(d) cmt. 1. This application note further explains that, except as otherwise provided, "the total punishment is to be imposed on each count and the sentences on all counts are to be imposed to run concurrently to the extent allowed by the statutory maximum sentence of imprisonment for each count of conviction." *Id.* "Usually, at least one of the counts will have a statutory maximum adequate to permit imposition of the total punishment as the sentence on that count. The sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum, and be made to run concurrently with all or part of the longest sentence. If no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment." *Id.*

permissibly, 'intertwined' with the determination that the terms of imprisonment should run consecutively." *Id.* (quoting *Johnson,* 640 F.3d at 208).

Much like the district court in *King*, the district court here did not say, "I am imposing consecutive sentences for x reason," but the record shows that the court "indicate[d] that its reasons for imposing consecutive sentences were the same as those for which it determined the length of his sentence," *Cochrane*, 702 F.3d at 347 (citing *Johnson*, 640 F.3d at 208). That is, the court's concurrent/consecutive analysis was plainly bound up with its analysis of the § 3553(a) factors. Any possible deficiency under *Cochrane* is overcome by the obviousness of the court's analysis. The court had asked the parties for briefing on consecutive sentencing and noted that this should address the § 3553(a) factors. The court then discussed these factors at length and concluded: "[A]fter much thought and attempt to balance all of this and with the focus being on what your behavior was, as I've tried to *summarize it in my statement of reasons and following the factors*, I'm going to commit you to the custody of the attorney on Count One for 200 months, *to run consecutive . . .* to Count Two, a hundred months." R. 473, PID 2988 (emphasis added).[4]

Further, the court had adopted the presentence report, which found that "Section 5G1.2(d) calls for imposition of consecutive sentences when sentencing on multiple counts under certain circumstances, as is the case in this instance." R. 462, PID 2907. And when defense counsel remarked that the new sentence was "effectively" the same as before, the district court said this was because it was sentencing the "same behavior." Given this record, the natural conclusion is that, based on its § 3553(a) analysis, the court found the seriousness of the underlying conduct still

---

[4] Post-argument, Duncan submitted a notice of supplemental authority citing *United States v. Morris*, where this court reversed the district court's imposition of the same sentence on resentencing through the mechanism of imposing consecutive sentences. *See* No. 22-1970, 2023 WL 4117939, *5 (6th Cir. June 22, 2023). But *Morris* is consistent with our conclusion. Unlike here, the district court in *Morris* gave no rationale for consecutive sentencing except the court's discretion, *id.*, conducted an insufficient § 3553(a) analysis, *id.*, and imposed an *above*-Guidelines sentence where the range was *lower* on remand than at the original sentencing, *id.*

supported a 300-month sentence, which under the circumstances meant running the sentences consecutively. *See* U.S.S.G § 5G1.2(d); *King*, 914 F.3d at 1025 (explaining that, when imposing consecutive sentences, a district court need not explicitly reference the relevant Guideline if the record shows that the court considered it and the court "makes 'generally clear the rationale under which it has imposed the consecutive sentence'" (quoting *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011)).[5]

## B.

Duncan next argues that the organizer enhancement under U.S.S.G. § 3B1.1(c) should not have been applied because, he asserts, it was not applied at his prior sentencing; there was no new evidence at resentencing about leadership or organization; and the organizer enhancement has no relation to Count 3.[6] Duncan asserts that our review is de novo because he raises questions of law; the government argues that Duncan forfeited a challenge to the enhancement, so review is for plain error. Again, the standard of review is immaterial to the outcome; we find no error even reviewing de novo.

Duncan's arguments fail because the record shows that the court *did* apply the organizer enhancement at Duncan's initial sentencing. Duncan's 2018 presentence report recommended applying the two-level organizer enhancement and used it to find a total offense level of 33. And although the court never explicitly mentioned this enhancement at the initial sentencing, the court

---

[5] We note also that Duncan's resentencing memorandum explicitly addressed U.S.S.G. § 5G1.2(d), acknowledging that this Guideline "would suggest the [c]ourt should run the sentences . . . consecutively," and the memorandum was framed around why the court should nevertheless impose concurrent sentences. R. 422, PID 2516-20. And at the resentencing hearing, the government explicitly said that "[t]he [G]uidelines in this case, because it exceeds the statutory maximum, . . . suggest[] consecutive sentencing," clearly referencing § 5G1.2(d). R. 473, PID 2974-75.

[6] Duncan also argues that because the government did not challenge the absence of the organizer enhancement at his initial sentencing, the government forfeited "its right to contest the lack of application at later stages." Appellant's Br. 41-42. But as the government correctly notes, any forfeiture "binds parties, not courts," so the district court could impose the organizer enhancement. Appellee's Br. 27-28 (citing *United States v. McFalls*, 675 F.3d 599, 606 (6th Cir. 2012)).

stated that Duncan "organized" and "planned" the crime, and the court's score of 33 for Duncan's offense level could not have been reached without the organizer enhancement. Accordingly, we reject Duncan's challenges to the enhancement.

C.

Duncan argues that the district court gave "unreasonably low weight to the pertinent factor of disparity" among codefendants at resentencing and "abandon[ed]" this factor "in an arbitrary manner," thus abusing its discretion. Appellant's Br. 44.

Duncan's disparity argument fails. First, co-defendant disparity is not a § 3553(a) factor. *See United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007). Second, the court at resentencing *did* engage in a significant discussion comparing Duncan with Fitzgerald, noting that Duncan's "culpability [was] at the top of what all [] other co-conspirators did" and that, while Fitzgerald shot Odom, Duncan encouraged him to do so and "encouraged him to shoot him one more time and make sure he was dead," which Fitzgerald did not do. The court concluded that Duncan's leadership role "entitled [the court] to give [him] more of the responsibility for the criminal activity that [he] and others engaged in." R. 473 at 2981-82. We find no error.

IV.

Duncan challenges the substantive reasonableness of his sentence on three bases: the imposition of consecutive sentences; the sufficiency of punishment under the Hobbs Act; and co-defendant disparity. Because his sentence is below the Guidelines range, this court presumes reasonableness, and Duncan "bear[s] a heavy burden." *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022) (quoting *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013)).

Duncan argues that the imposition of consecutive sentences was substantively unreasonable because this was "the same total punishment as at his initial sentencing, despite there

being one fewer count," and "the court made no findings that would justify newly consecutive sentences." Appellant's Br. 19-20. "[A]n evaluation of the substantive reasonableness of a decision to impose a consecutive sentence depends heavily upon an evaluation of the procedural reasonableness." *Berry*, 565 F.3d at 342. Here, given our conclusion that Duncan's consecutive sentence is procedurally reasonable in this respect and Duncan's failure to meet his "heavy burden" to show the unreasonableness of his below-Guidelines sentence, *see Nunley*, 29 F.4th at 834, this argument fails.

Duncan also argues his sentence is substantively unreasonable because it is greater than the 240-month maximum sentence for Hobbs Act robbery. As the government notes, *Pinkerton v. United States* makes clear that "the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." Appellee's Br. 37 (quoting 328 U.S. 640, 643 (1946)). Thus, Duncan's sentence of 300 months does not exceed the statutory maximum, which is 480 months for the two counts, not 240 months.

Next, Duncan argues that, despite explicitly discussing co-defendant disparity at his initial sentencing, the court failed to consider this issue at resentencing. A court abuses its discretion when it "gives an unreasonable amount of weight to any pertinent factor." *United States v. Sexton*, 894 F.3d 787, 797 (6th Cir. 2018) (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). However, we have rejected many substantive-reasonableness challenges based on disparities among co-defendants. *See, e.g.*, *United States v. Wells*, 55 F.4th 1086, 1094 (6th Cir. 2022); *United States v. Sierra-Villegas*, 774 F.3d 1093, 1103 (6th Cir. 2014); *Simmons*, 501 F.3d at 626-67. Further, notwithstanding Duncan's assertions, and although Duncan never asked the court to consider this issue at resentencing, the district court was not "silen[t]" on the disparity issue. *Cf.* Appellant's Br. 44. Rather, the court clearly compared the two co-defendants. And it

was not "arbitrary" to give them different sentences on resentencing because the court's resentencing was plenary, and the court had discretion to find different sentences appropriate in light of its conclusions about Duncan's greater culpability.

V.

Lastly, Duncan argues that the district court's new sentence was either presumptively vindictive or actually vindictive. *See North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). The parties once again dispute the standard of review, but as before, Duncan's claim fails even reviewed under the more favorable standard.

In *United States v. Rodgers*, 278 F.3d 599, 604 (6th Cir. 2002), the district court re-imposed the same sentence on remand, after denying the acceptance-of-responsibility reduction as before, but for reasons not discussed at the original sentencing, which relied on impermissible grounds. We explained that there was no presumption of vindictiveness because the presumption "does not arise where the resentence term is equal to the original sentence." *Id.* But Duncan points to *United States v. Murphy*, 591 F. App'x 377, 383 (6th Cir. 2014), an unpublished decision in which a panel of this court stated that "we have yet to explicitly decide whether the presumption of vindictiveness arises when the defendant receives more time on the remaining counts than at the original sentencing," *United States v. Murphy*, 591 F. App'x 377, 383 (6th Cir. 2014). In *Murphy*, the panel explained that our precedents favor the "packaging" approach followed by most other circuits, under which "the presumption of vindictiveness does not arise where the defendant's overall sentence is less than or equal to his original sentence," and held:

> In multiple-count cases, absent extraordinary circumstances, the presumption of vindictiveness does not arise when the district court sentences the defendant to more time on a count than at the original sentencing for that and one or more other counts if (1) the dismissed and remaining counts are *interdependent* and (2) the new sentence is less than or equal to the original sentence on all the counts.

*Id.* at 383-85 (emphasis added).

But even accepting that *Rodgers* left room for *Murphy*, and applying that unpublished decision, Duncan's claim fails. Duncan asserts that Count 3 was not *interdependent with* but rather *independent of* Counts 1 and 2, and thus his sentence is outside *Murphy*'s bounds. But this argument fails because we have already determined that claims are interdependent where, because of a vacated § 924(c) conviction, a firearm enhancement applies that could not have applied before due to double counting. *United States v. Foster*, 765 F.3d 610, 614-15 (6th Cir. 2014). Because these same circumstances apply here, Count 3 was "interdependent" with Counts 1 and 2, barring a presumption of vindictiveness.

As for actual vindictiveness, Duncan points to the fact that his sentence is substantially greater than Fitzgerald's. But he cites no caselaw to suggest that actual vindictiveness is supported by this fact alone. And the record strongly suggests there was no vindictiveness. The court explained its reasoning at length, "trying . . . as best as [it] humanly" could to find reasons for greater lenience, and weighed the seriousness of the conduct, Duncan's leading role, Duncan's difficult childhood, and his intellectual disability. R. 473, PID 2977-88. Although the total duration of the sentence remained the same, the court again imposed a sentence 60 months below the Guidelines range. This record is insufficient to establish vindictiveness.

VI.

For the reasons stated, we AFFIRM.