RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name:

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 21-5471

NICHOLAS NUNLEY,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:19-cr-00122-1—Travis Randall McDonough, District Judge.

Decided and Filed:

Before: GILMAN, STRANCH, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Brandon Douglas Raulston, Chattanooga, Tennessee, for Appellant. Brian Samuelson, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Nicholas Nunley pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to 112 months in prison. He now challenges both the procedural and substantive reasonableness of his below-Guidelines sentence. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Nunley's indictment stems from an incident that occurred in May 2019. His brother Basil learned that Nunley had taken a firearm from their father's vehicle, so Basil went to Nunley's residence to persuade him to "get rid" of it. According to Basil's subsequent statement to law-enforcement officers, Nunley then threatened to shoot Basil, which caused Basil to hit Nunley with a piece of wood as Basil fled the scene. Nunley used the firearm to fire seven shots at his brother, but Nunley was fortunately not a good shot. Basil was able to get in his car and leave unharmed.

McMinn County Sheriff's officers responded to a call of shots being fired and arrived soon thereafter. They encountered Nunley in a car along the roadway outside his residence. Nunley pointed the firearm at one of the officers before driving away, leading the officers on a high-speed chase. Nunley eventually drove into a field, abandoned his car, and started running on foot. After a lengthy pursuit, Nunley turned and fired one shot at the officers chasing him. He then barricaded himself in a building located next to the field. The responding officers attempted unsuccessfully to convince Nunley to surrender before eventually using an armored truck to breach the building, at which point the officers were able to take Nunley into custody. During the entry, the officers heard another gunshot, also believed to have been fired from Nunley's firearm.

Nunley was found in possession of a Hi-Point 9 millimeter pistol. He told the officers that he had taken the gun from his father's vehicle one week prior to the incident. Three days after the incident, agents from the Bureau of Alcohol, Tobacco, and Firearms interviewed Nunley, who admitted to them that he was a convicted felon.

Nunley pleaded guilty to possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). In its Presentence Report, the Probation Office calculated a base offense level of 20 and recommended the following two enhancements: (1) a four-level "Additional Felony" enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for a defendant who "used or possessed any firearm or ammunition in connection with another felony offense," and (2) a six-level

"Official Victim" enhancement under U.S.S.G. § 3A1.2(c)(1) for assaulting a law-enforcement officer "during the course of the offense or immediate flight therefrom."

Nunley objected at his sentencing hearing to the application of both enhancements on the ground that they would amount to impermissible double counting because the enhancements punished the same conduct—i.e., his shooting at the officers. He conceded during the hearing that the Official Victim enhancement was applicable, but he contended that no other felony offense was committed apart from his interaction with the officers. For that reason, he argued, the Additional Felony enhancement should not apply.

As for the earlier shooting at his brother Basil, his brother testified at the sentencing hearing that the aggressor was in fact Basil himself. Nunley therefore argued that his shooting at Basil was done in self-defense, which would be a complete defense to the crime and preclude that act from being a separate "assault" that would otherwise justify the Additional Felony enhancement under U.S.S.G. § 2K2.1(b)(6)(B). And because the shooting at the officers was the basis for the Official Victim enhancement under U.S.S.G. § 3A1.2(c)(1), Nunley argued that that firing could not also form the basis for the Additional Felony enhancement.

The district court overruled Nunley's objection, explaining that the Additional Felony enhancement applied because Nunley pointed the gun at the first officer on the scene and because he had used the gun to commit an aggravated assault against his brother. As to the latter assault, the court was unconvinced by Basil's testimony at the sentencing hearing. It concluded that Nunley had acted as described in the Presentence Report, which was based on the initial statements by Basil to the officers.

In the alternative, the court held that the application of both enhancements was proper even if based solely on Nunley's interactions with the officers. The court relied on *United States v. Barnes*, 791 F. App'x 512 (6th Cir. 2019), which held that the "cumulative application of the Additional Felony and Official Victim enhancements under §§ 2K2.1(b)(6)(B) and 3A1.2(c)(1) is not impermissible double counting." *Id*. at 518.

Application of the two enhancements yielded a total offense level of 30. After three levels were deducted for the acceptance of responsibility, Nunley's final offense level was 27.

This was combined with his criminal-history category of V, resulting in a Guidelines range of 120 to 150 months of imprisonment. The Guidelines range, however, was compressed by a 120-month statutory maximum sentence for the offense to which he pleaded guilty.

Nunley moved for a downward departure or variance, arguing that his extreme substance addiction to a variety of substances was a primary factor in the commission of his offense. He also contended that his acceptance of responsibility was not adequately reflected in the Guidelines because he pleaded guilty even though his Guidelines range was higher than the statutory maximum sentence.

The district court ultimately sentenced Nunley to 112 months of imprisonment, which was 8 months below his Guidelines range. In explaining the sentence, the court detailed the nature and circumstances of the crimes, calling them "very concerning, very serious, but also accounted for in the guidelines." The court also noted that Nunley was fortunate that he "didn't kill somebody . . . or more [] than one person in this interaction[,]" which he "could easily have done." Nunley's long criminal history suggested to the court that Nunley had a "lack of respect for the law," which the court explained "should be a serious consideration in crafting th[e] sentence," especially since Nunley's prior prison terms "ha[d] not gotten [his] attention to the degree that the community and society demands." This led the court to conclude that just punishment required "a significant sentence of incarceration."

The district court also took into account Nunley's history and personal characteristics, noting that Nunley had a "long history of drug abuse" and "mental health issues." On the other hand, the court commented on Nunley's "history of using guns aggressively and dangerously."

Two factors convinced the district court to impose a below-Guidelines sentence. First, Nunley accepted responsibility for his actions. The court stated that it had listened to Nunley's allocution, in which Nunley detailed his extensive history of substance abuse, and found "parts of it . . . compelling." This convinced the court that Nunley understood "what [he'd] done" and "why [he'd] done it," even if he was not "strong enough yet to overcome those [] forces." The second factor was the relative consequences of Nunley's crime. As bad as the court said that his crime was— "and it was really bad"—the court could "imagine other felon-in-possession cases

that could be worse." The court therefore concluded that, "despite all the things that [it had] said about consideration of the [18 U.S.C. §] 3553(a) factors," a below-Guidelines sentence of 112 months was appropriate.

When asked if either party had any objections to the sentence that had not already been raised, both Nunley and the government said that they did not. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

Nunley challenges both the procedural and substantive reasonableness of his sentence. A sentence is procedurally unreasonable if, among other things, the district court "improperly calculates the Guidelines range . . . or fails to adequately explain the chosen sentence." *United States v. Davis*, 751 F.3d 769, 773 (6th Cir. 2014) (internal parentheses and alterations omitted) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Substantive reasonableness, on the other hand, concerns "whether the sentencing court gave reasonable *weight* to each relevant factor" under 18 U.S.C. § 3553(a). *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019) (emphasis in original). This inquiry, at bottom, addresses "a claim that a sentence is too long." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

We generally review both aspects of a district court's sentencing decision under the abuse-of-discretion standard. *Gall*, 552 U.S. at 51. In so doing, the court's legal conclusions—including its interpretation of the Guidelines—are reviewed de novo, and its factual findings are reviewed under the clear-error standard. *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). But where a defendant fails to appropriately preserve a procedural-reasonableness argument, we review the argument under the more exacting plain-error standard. *United States v. Herrera-Zuniga*, 571 F.3d 568, 579-80 (6th Cir. 2009). Substantive reasonableness arguments, in contrast, "'do not need to be raised before the district court to be preserved for appeal,' and so we apply abuse of discretion review even where such arguments were not raised below." *United States v. Sherrill*, 972 F.3d 752, 769 (6th Cir. 2020) (quoting *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011)).

**B. Procedural reasonableness**

Nunley makes two arguments regarding his claim of procedural unreasonableness. He first argues that the cumulative application of the Additional Felony and Official Victim enhancements is impermissible double counting. Second, he argues that the district court did not provide a sufficiently clear explanation for the chosen sentence.

### 1. *The district court properly applied both the Additional Felony and Official Victim enhancements*

Impermissible double counting is a procedural error that "occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways." *Battaglia*, 624 F.3d at 351 (citation omitted). "But no double counting occurs if the defendant is punished for distinct aspects of his conduct." *Id.* In other words, district courts "may impose two enhancements arising from the same conduct, provided the enhancements 'penalize . . . distinct harms.'" *United States v. Sweet*, 776 F.3d 447, 451 (6th Cir. 2015) (quoting *United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008)). Moreover, this court has "recognize[d] that the Sentencing Guidelines expressly mandate double counting under some circumstances through the cumulative application of sentencing adjustments." *United States v. Fleischer*, 971 F.3d 559, 570 (6th Cir. 2020) (quoting *United States v. Farrow*, 198 F.3d 179, 194 (6th Cir. 1999)).

This court has previously held in an unpublished opinion that the application of the Additional Felony and Official Victim enhancements, under U.S.S.G. §§ 2K2.1(b)(6)(B) and U.S.S.G. § 3A1.2(c)(1), respectively, did not constitute impermissible double counting. *United States v. Barnes*, 791 F. App'x 512, 518 (6th Cir. 2019). We find no reason to depart from that holding in the present case.

First, as the district court pointed out, Nunley's shooting at Basil and his pointing the firearm at the first officer to respond to the scene were each actions that could independently serve as the basis for the Additional Felony enhancement, apart from Nunley's later shooting at the officers who pursued him on foot. *See* Tenn. Code Ann. § 39-13-101(a)(2) (assault occurs where a person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury"); *see also* Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii) (aggravated assault occurs where a

person "[i]ntentionally or knowingly commits an assault" and the assault "[i]nvolved the use or display of a deadly weapon").

Although Basil testified to a different version of events at sentencing, we find no basis to hold that the district court committed a clear error in relying on Basil's initial statements to the officers rather than his subsequent testimony at sentencing. *See United States v. Wooten*, 689 F.3d 570, 573 n.1 (6th Cir. 2012) ("The 'clearly erroneous' standard is deferential, and factual findings derived from credibility determinations are entitled to particular deference in our court. Where, as here, there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (internal citation and quotation marks omitted)).

The district court also correctly concluded that there would be no impermissible double counting even if the two enhancements were both applied solely because of Nunley's shooting at the pursuing officers. That is because these enhancements, even when based on the same conduct, address distinct aspects of that conduct. "[T]he Additional Felony enhancement addresses [Nunley]'s use of a firearm in connection with a felony, and the Official Victim enhancement concerns the victim's status as a police officer." *Barnes*, 791 F. App'x at 518; *see also United States v. Hampton*, 628 F.3d 654, 664 (4th Cir. 2010) ("The § 2K2.1 enhancement addresses the connection between a felony and use of a firearm, whereas the § 3A1.2 adjustment concerns the identity of the victim of [the defendant]'s assaultive conduct." (quoting *United States v. Hill*, 583 F.3d 1075, 1081 (8th Cir. 2009)).

Distinguishing between enhancements based on the characteristics of the defendant or his actions, versus enhancements based on the characteristics of the defendant's victim, is often critical in a double-counting analysis. In *United States v. Volkman*, 797 F.3d 377 (6th Cir. 2015), for example, a doctor received both a "special skill" enhancement and a "vulnerable victims" enhancement when he unlawfully distributed controlled substances to his drug-addicted patients. *Id*. at 398-99. This court held that the application of both enhancements did not constitute impermissible double counting because "[t]he two enhancements at issue focus on different aspects of the case." *Id*. at 399.

The "special skill" enhancement at issue in *Volkman* is applied when the defendant uses "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing" to facilitate a crime. *Id*. (quoting U.S.S.G. § 3B1.3, cmt. n.4). "In contrast[,] . . . the vulnerable-victim enhancement focuses on the nature of the *victim*, as opposed to the offender[,]" and that enhancement may not be applied solely because a defendant is a doctor and his victim a patient. *Id*. (emphasis in original) (noting that the vulnerable-victim enhancement requires that a person be "unusually vulnerable due to . . . mental condition") (quoting U.S.S.G. § 3A1.1(b) cmt. n.2).

So too here. The Official Victim enhancement addresses the nature of the victim and may be applied regardless of whether the defendant uses a firearm in connection with another felony offense, as is necessary to apply the Additional Felony enhancement. If a defendant uses a gun to assault an ordinary citizen, the Additional Felony enhancement would be applied, but the Official Victim enhancement would not. Alternatively, if a suspect fleeing arrest assaults a police officer with a knife instead of a firearm, the Official Victim enhancement would apply, but not the Additional Felony enhancement. But in cases such as the one before us—when a defendant uses a firearm to assault officers trying to arrest him—both enhancements apply because distinct harms are present.

The Guidelines themselves evince a clear intent to have both enhancements apply cumulatively. As the Tenth Circuit has explained,

> we find guidance, at least by negative inference, in the commentary to § 3A1.2. That commentary directs courts not to apply the § 3A1.2 official victim adjustment "if the offense guideline specifically incorporates this factor." U.S. Sentencing Guidelines Manual § 3A1.2 cmt. n. 2 (2002). In other words, § 3A1.2(b)(1) may not be applied if the *offense* conduct outlined in Chapter 2 specifically addresses whether the defendant assaulted a law enforcement officer and created a substantial risk of serious bodily injury to such officer, knowing (or with reasonable cause to believe) the victim's official status, in the course of the offense or immediate flight therefrom. . . . By implication, then, applying § 3A1.2 along with Chapter Two enhancements which do not "specifically incorporate" the victim's status as an officer is permitted.

*United States v. Coldren*, 359 F.3d 1253, 1256 (10th Cir. 2004) (emphasis in original) (footnote omitted). We agree with the Tenth Circuit's conclusion that "the guidelines demonstrate a clear

intent to punish a convicted felon who uses a gun in connection with another felony to assault a police officer more severely than a convicted felon who uses a gun in connection with another felony without assaulting a police officer." *Id*. at 1257.

In sum, Nunley's conduct triggered both the Additional Felony and the Official Victim enhancements by firing at the officers in his attempt to evade arrest. Because the enhancements punish different aspects of Nunley's conduct, the district court did not engage in impermissible double counting by applying both enhancements.

### 2. *The district court adequately explained the basis for Nunley's sentence*

We now turn to Nunley's second procedural-reasonableness challenge. Under the rule that this court adopted in *United States v. Bostic,* 371 F.3d 865 (6th Cir. 2004), district courts are required, after announcing the defendant's sentence, to "ask the parties whether they have any objections to the sentence . . . that have not previously been raised." *Id*. at 872. If the district court complies with this procedure, then any procedural errors not objected to but subsequently challenged on appeal are limited to a review under the plain-error standard. *United States v. Herrera-Zuniga*, 571 F.3d 568, 578-79 (6th Cir. 2009). This includes challenges to the adequacy of a district court's explanation of a sentence. *United States v. Penaloza*, 648 F. App'x 508, 536 (6th Cir. 2016) ("Although a defendant need not mention issues that were 'previously raised' in response to the *Bostic* question, an objection must be made to 'the adequacy of the court's explanation for the sentence,' which 'becomes apparent as soon as the court finishes announcing its proposed sentence.'" (internal alterations and citations omitted) (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc))).

Here, the district court complied with *Bostic* by asking the parties, after it had announced the sentence, if they had any objections to the sentence that they had not already raised. Neither Nunley nor the government had any objections. We therefore review Nunley's challenge to the adequacy of the explanation given by employing the plain-error standard, which requires Nunley to show (1) an "error" (2) that "was obvious or clear," (3) that "affected defendant's substantial rights" and (4) that "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (citation omitted).

Generally, an adequate explanation of a sentence should "set forth enough to satisfy the appellate court that [the sentencing judge] has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). The question is whether "the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *Vonner*, 516 F.3d at 387 (citation and internal quotation marks omitted).

Nunley has failed to identify any error, plain or otherwise, in the district court's explanation of his sentence. As explained in more detail above, the district court began by recalling the details of Nunley's offense, then described his criminal history and "lack of respect for the law," and, finally, discussed the need for "a sentence that protects the public." The court also demonstrated that it had considered Nunley's arguments for leniency by discussing his acceptance of responsibility and his history of drug abuse and mental-health issues, which were the focus of Nunley's allocution.

Ultimately, the district court concluded that, despite the serious nature of the offense, a below-Guidelines sentence was appropriate because Nunley had accepted responsibility for his conduct and the court could imagine felon-in-possession cases "that could be worse." Just before announcing the sentence, the court also stated that it had "considered the nature and circumstances of the offense, the history and characteristics of the defendant, and the advisory guideline range, as well as the other factors listed in Title 18 U.S.C. Section 3553(a)."

The above explanation was more than sufficient to provide a reasoned basis for the district court's decision. For example, this court has affirmed a sentencing explanation as reasonable under "either standard of review" where "[t]he district court specifically noted that [the defendant]'s continued unlawful conduct showed that he does not take his obligations seriously when it comes to penalties and sanctions imposed by courts," and the court "identified [the defendant's] action, the seriousness of the offense, [and] the need to promote respect for the law" as reasons for the sentence. *United States v. Washington*, 766 F. App'x 313, 322 (6th Cir. 2019) (internal quotation marks omitted). And this court has affirmed far less thorough explanations under the plain-error standard of review. *See Vonner*, 516 F.3d at 386-88 (finding

no plain error where the district court's explanation, which "[n]o one would call . . . ideal," stated that it had considered the Guidelines range and the 18 U.S.C. § 3553(a) factors, but "did not specifically address all of Vonner's arguments for leniency").

The district court's explanation of Nunley's sentence ensured that Nunley, the public, and this court understood why the district court picked the sentence that it did. For that reason, the sentence was procedurally reasonable.

## C. Substantive reasonableness

Nunley next attacks the substantive reasonableness of his sentence, arguing that he is entitled to an even larger downward variance than the one that he received because, in his view, the district court gave too little weight to his request for leniency, acceptance of responsibility, and his struggle with alcoholism and drug addiction. A sentence is substantively unreasonable "if it is selected arbitrarily, if it is based on impermissible factors, if it fails to consider a relevant sentencing factor, or if it gives an unreasonable amount of weight to any pertinent factor." *United States v. Massey*, 663 F.3d 852, 857 (6th Cir. 2011) (citation omitted). We must also "consider whether the length of the sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing in light of the § 3553(a) factors." *Id*. at 860 (citation and internal quotation marks omitted).

The challenge here is to a sentence already below Nunley's Guidelines range. Because of that circumstance, "rather than asking whether considerations based upon § 3553(a) are sufficiently compelling to justify the sentence, this court must determine whether the considerations based upon § 3553(a) are so compelling as to necessitate a shorter sentence." *United States v. Kirchhof*, 505 F.3d 409, 414-15 (6th Cir. 2007). "Although it is not impossible to succeed on a substantive-reasonableness challenge to a below-guidelines sentence, defendants who seek to do so bear a heavy burden." *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013).

Nunley fails to meet that heavy burden. Contrary to Nunley's assertions, the district court explicitly considered and accounted for Nunley's acceptance-of-responsibility and substance-abuse arguments, but those factors had to be weighed against the serious nature of

Nunley's crime and his lengthy criminal history.  *See, e.g.*, *United States v. Jones*, 784 F. App'x 358, 365 (6th Cir. 2019) (concluding that the district court properly weighed the defendant's mental-health and substance-abuse problems where the court "acknowledged these issues and discussed them at length, but ultimately determined that the protection of the community and reflecting the seriousness of the offense outweighs the need for a downward variance" (internal alteration and quotation marks omitted)).  That delicate balance is appropriately left to district courts so long as the decision is reasonable, which is the case here.  *See United States v. Phinazee*, 515 F.3d 511, 521 (6th Cir. 2008) (explaining that this court's role is not to "decide afresh whether [the defendant]'s circumstances warrant a larger variance or whether the sentence is reasonable").

The record before us shows that "the district court listened to [Nunley]'s arguments for a lower sentence" and "found them convincing[,] but only to a point."  *See United States v. Head*, 845 F. App'x 421, 427 (6th Cir. 2021) (per curiam) (affirming a below-Guidelines sentence where "the district court considered and accounted for [the defendant]'s vulnerabilities" (citation and internal alterations omitted)).  Because Nunley has identified no basis "so compelling as to necessitate a shorter sentence," *see Kirchhof*, 505 F.3d at 414-15, his sentence was substantively reasonable.

### III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.