NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0202n.06

No. 23-1554

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 06, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| MITCHELL JOSEPH PIERCE, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: LARSEN, READLER, and DAVIS, Circuit Judges.

LARSEN, Circuit Judge. Between December 2021 and May 2022, Mitchell Joseph Pierce sent an extensive series of threatening phone messages and emails to his ex-wife, his lawyers, his probation officer, and others. These included threats of death, rape, and torture. Pierce was arrested after confronting his ex-wife in a commercial parking lot while possessing several firearms. He pleaded guilty to stalking and to being a felon in possession of a firearm. Pierce was sentenced to 180 months in prison. On appeal, Pierce argues that his sentence is procedurally and substantively unreasonable. For the reasons stated, we AFFIRM.

I.

Mitchell Pierce has a substantial criminal history, including prior convictions relating to domestic violence. Before the stalking episode at issue in this case, Pierce had been convicted of

assaulting his then-wife, M.S., with a knife in 2021.[1]  As a part of his parole conditions, Pierce was instructed to stop contacting M.S. in any way.  Yet beginning in December 2021, Pierce started calling and texting M.S. regularly.  Pierce's communications turned physically threatening by March 2022.  For example, on April 17, 2022, Pierce called M.S. 70 times and left her a voicemail in which he threatened to kill her and her entire family.  On April 22, 2022, Pierce threatened M.S. via email, providing a graphic description of his plans to torture, rape, and kill M.S. and her children.

Pierce's threats were not limited to M.S. and her family.  On April 23, 2022, he suggested to M.S. that he would kill children at M.S.'s church indiscriminately.  Pierce also threatened to kill M.S.'s ex-boyfriend, the family of Pierce's own attorneys, and the family of his parole officer. Pierce told those individuals that he had researched them and had obtained information that could be used to find them or their family members.  For example, in emails to his divorce attorneys (a husband-and-wife legal team), Pierce revealed that he knew the attorneys' daughter's age, her alma matter, and where she worked.  In those emails, Pierce threatened to shoot the attorneys' children if they did not return Pierce's legal fees.

On May 2, 2022, police received a report of shots fired outside of M.S.'s ex-boyfriend's home.  Later, Pierce sent M.S. a text message saying, "I don't lie I back everything I promise.  Ask [M.S.'s ex-boyfriend]."  Pierce also sent M.S. a video of himself driving past M.S.'s home that same day.  He eventually started following M.S. in his car until he confronted her in the parking lot of a UPS store.  Pierce then got out of his car and started walking towards the front of M.S.'s car.  Fearing for her life, M.S. struck Pierce with her car before leaving the area.  Officers

---

[1] The Presentence Investigative Report's (PSR's) criminal history also documents prior convictions for domestic violence and stalking offenses in 2010 and 2013, among other violent offenses.

responded to the scene after receiving a call from M.S., and they eventually located Pierce at a nearby restaurant where he was arrested. Pierce's car was later impounded and subjected to an inventory search, revealing 3 firearms, 65 rounds of live ammunition, and a ballistic vest.

Pierce was charged with stalking under 18 U.S.C. § 2261A and felon in possession of a firearm under 18 U.S.C. § 922(g)(1). He pleaded guilty to those charges. The PSR calculated the Guidelines range at 121 to 151 months. During the sentencing hearing, the district court reviewed the PSR's sentencing calculation, agreed with the offense level it suggested, and used the sentencing range as a starting point. The parties conceded that the Guidelines calculation was correct. But the government requested an upward variance of at least 180 months' imprisonment, emphasizing Pierce's history of criminal conduct and the likelihood of recidivism. Pierce requested a within-Guidelines sentence. The district court varied upward and sentenced Pierce to 180 months in prison. Pierce now appeals his sentence.

## II.

On appeal, Pierce argues that the district court's sentence was procedurally unreasonable for several reasons. Because Pierce did not raise these objections after invitation by the district court, the plain error standard applies. *See United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004); *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). Thus, Pierce must show that "(1) an error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that 'the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Blackie*, 548 F.3d 395, 399 (6th Cir. 2008) (quoting *United States v. Olano*, 507 U.S. 725, 734–37 (1993)) (alteration in original).

Pierce first argues that the district court plainly erred by failing to adequately explain why its sentence of 180 months was appropriate, making the sentence procedurally unreasonable. For a

sentence to be procedurally reasonable, the district court must "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007); *see also United States v. Nunley*, 29 F.4th 824, 833 (6th Cir. 2022). On the other hand, the district court is not obliged to "engage in a formulaic point-by-point refutation of a defendant's mitigation arguments" so long as it engages in a "meaningful" sentencing hearing. *United States v. Sweeney*, 891 F.3d 232, 239 (6th Cir. 2018) (citation omitted).

The district court adequately explained its sentence. The court discussed the nature and circumstances of the offense and Pierce's individual characteristics. 18 U.S.C § 3553(a)(1). It considered Pierce's criminal history and his history of bipolar disorder; and it emphasized the severe, calculated, and escalating nature of Pierce's harassment and threats. The court also discussed the need for the sentence imposed to reflect the goals of criminal sentencing. *Id.* § 3553(b)(2). The court weighed the need to incapacitate Pierce against the interests in rehabilitating him. *Id.* § 3553 (a)(2)(A)-(C). The district court observed that Pierce's pattern of recidivism suggested that prior episodes of deterrence had failed, countenancing an upward variance. Moreover, the court considered the kinds of sentences available and the sentence the Guidelines recommended. *Id.* § 3553 (a)(3)-(4). The district court explicitly acknowledged that it was varying from the Guidelines and gave reasons for doing so. Finally, by articulating its desire to ensure adequate incapacitation of Pierce while preserving some hope for rehabilitation, the district court demonstrated that it was imposing a sentence it considered "sufficient, but not greater than necessary" to comply with the goals of criminal sentencing. *Id.* § 3553(a). In sum, the district court adequately explained its sentence. *See United States v. Zabel*, 35 F.4th 493, 505 (6th Cir. 2022).

Contrary to Pierce's claims, the district court also explicitly addressed Pierce's arguments for sentencing relief. As outlined above, the court acknowledged and discussed the mitigation factors advanced by Pierce's counsel but found those factors to have little sentencing significance. Thus, the district court discharged its obligation to consider Pierce's non-frivolous sentencing arguments. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *Sweeney*, 891 F.3d at 239.

Pierce next argues that his sentence was procedurally unreasonable because the district court referenced his criminal history in deciding to vary upwards, even though that history is already accounted for in the initial Guidelines calculation. From the start, this argument fails because we have "consistently held that a district court" does not craft an unreasonable sentence "simply because, in evaluating the 18 U.S.C. § 3553(a) factors, it considers, as one component of its decision to vary upward from the Guidelines, conduct that also factored into calculating the Guidelines range." *See United States v. Trejo*, 729 F. App'x 396, 399–400 (6th Cir. 2018) (collecting cases).

Finally, Pierce argues that the district court's sentence was procedurally unreasonable to the extent that it was based on a pattern of purportedly escalating conduct. He urges that his immediate offense represents mere threats, while some of his prior convictions involved completed or attempted violent crimes. Accordingly, he disagrees with the district court's characterization of his criminal trajectory.

The district court did not err in concluding that Pierce's conduct was escalating. Despite the lack of actual violence here, Pierce's threats against M.S. and others were voluminous, severe, and credible. The threats contemplated violent conduct far more serious than the conduct that was

the subject of Pierce's prior convictions.[2]  The threats were communicated over the course of around five months.  When Pierce confronted M.S. on the day of his arrest, he was in possession of considerable firepower—including three firearms, 65 rounds of live ammunition, and a bulletproof vest.  And the district court also noted the "strong circumstantial evidence" that Pierce had discharged a firearm outside the home of M.S.'s ex-boyfriend.  In short, the district court did not err, plainly or otherwise, in crafting Pierce's sentence.

### III.

Pierce also claims that his sentence was substantively unreasonable.  When reviewing a district court's sentence for its length, we apply an abuse of discretion standard of review.  *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).  While substantive reasonableness analysis necessarily entails review of the merits of a district court's judgment, appellate courts may not invalidate a sentence only because they would have preferred a different one.  *United States v. Johnson*, 640 F.3d 195, 202 (6th Cir. 2011).  And although a sentence's variance from the Guidelines is a factor to be considered, an outside-the-Guidelines sentence is not presumed unreasonable.  *Id.*

Pierce argues that the district court's upward variance was substantively unreasonable because it relied on criminal history—a factor already counted in the initial Guidelines calculation.  But we have often upheld the substantive reasonableness of sentences that relied on the defendant's criminal history in this way when justified by the facts of the case.  *See Trejo*, 729 F. App'x at 399.  Here, Pierce had a significant history of domestic violence offenses.  Furthermore, a previous episode of significant incarceration had evidently neither rehabilitated Pierce nor deterred him

---

[2] The district court noted that Pierce threatened M.S. with rape with a barbed wire, decapitation, and torture.

from his misconduct in the immediate case. Considering the circumstances, the district court was free to give additional weight to Pierce's prior criminal history. *See United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020) (observing that sentencing courts may use prior criminal history to justify an upwards variance when unique recidivism concerns make that variance "necessary in order to advance the utilitarian objective of protecting the public and the retributivist objective of deterring [the defendant] from criminal conduct in the future").

What's more, the district court did not rely on Pierce's criminal history alone in deciding to vary upwards. The district court also observed that Pierce's harassment of M.S. had been ongoing for a period of months; that Pierce's conduct was escalating; and that Pierce had threatened people other than M.S. These bases are reasonable grounds for the district court's disposition. Our review of the substantive reasonableness of a district court's sentencing decision is "highly deferential" and we see no abuse of discretion here. *Rayyan*, 885 F.3d at 442.

Lastly, Pierce appears to argue separately that the district court's sentence was substantively unreasonable because the court "simply selected a sentence without any explanation." Appellant Br. at 18. Our discussion of the district court's reasoning throughout this opinion reveals why this assertion is false.

\* \* \*

We AFFIRM.