NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0182n.06

Case No. 24-1183

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 02, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| ANGELO ANTWAUN WILLIAMS, | ) | DISTRICT OF MICHIGAN |
| | ) | |
|     Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: SUTTON, Chief Judge; SILER and WHITE, Circuit Judges.

WHITE, Circuit Judge. Defendant-appellant Angelo Antwaun Williams (Williams) appeals his 70-month sentence for being a felon in possession of a firearm, asserting that the sentence is substantively and procedurally unreasonable. We affirm.

**I.**

On April 30, 2023, the Lansing Police Department (LPD) responded to a report of a shooting. The victim initially identified someone other than Williams as the shooter, but later stated that Williams had shot him. Officers then obtained a warrant for Williams's arrest. When officers attempted to arrest Williams on May 16, 2023, Williams fled on foot, and officers pursued and then arrested him. Williams dropped some items during the pursuit, including a firearm. The next day, during a *Mirandized* interview, Williams admitted that he had been in possession of a firearm when officers approached him and stated that he had "lots more" guns. (R. 28, Pre-Sentence Report, PID 82). He refused to say where these guns were located but suggested that police obtain search warrants for his grandfather's residence and his child's mother's residence.

Later, when police asked Williams again where his guns were stored, he stated that he did not have any guns. When the police asked a third time, Williams said that the guns were "buried far away." (*Id.*)

On June 27, 2023, a grand jury charged Williams with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Williams pleaded guilty to this charge. At Williams's sentencing hearing, the district court determined that the guidelines range was 46 to 57 months. The court asked Williams's counsel, "What do you make of your client's interview with law enforcement . . . , where he references lots more firearms at a location, which went undisclosed[?]" (R. 37, Sentencing Hearing Transcript, PID 233). Williams's counsel responded that he had no information on the firearms' location. Then, the court allowed Williams to speak on his own behalf, and he said, "[W]hen I made that reference that you just asked about, . . . I told [police] specifically that [the firearms] was my brother's that just recently passed away, that they was his guns, and they was registered." (*Id.*, PID 234).

In determining Williams's sentence, the district court first stated the factors to be considered under 18 U.S.C. § 3553. It then noted that Williams's past sentences—specifically, probation from March 2008 to December 2009, imprisonment from December 2009 to November 2012, imprisonment from September 2013 to November 2014, imprisonment from April 2017 to December 2018, and imprisonment from February 2020 to January 2021—failed to deter him from further criminal conduct. The court then explained:

> I'm particularly disturbed regarding [Williams's] statements made to the investigating officers on the date in question . . . . He stated that he has "lots more" guns but, of course, declined to give a location for those weapons or where they were stored. Mr. Williams takes the position now that those were his friend's firearms. I'm not at all sure I believe that assertion, and indeed, if they were somebody else's firearms and he was concerned about getting them off the street, he would have volunteered the location of these firearms to law enforcement so they could be taken off the street.

(R. 37, Sentencing Hearing Transcript, PID 236-37).  The district court varied upward by two levels to protect the public from potential future crimes by Williams, to deter Williams from committing additional crimes, and to deter others from committing similar crimes.  The modified guidelines range was 57 to 71 months.  The district court sentenced Williams to 70 months of imprisonment.  Williams now challenges his sentence.

## II.

A claim of procedural unreasonableness "goes 'more to the *process* by which the district court arrived at the given sentence than to the substantive aspect of the sentence (i.e., the relationship between the length of the sentence and the strength of the reasoning under § 3553(a)).'"  *United States v. Cabrera*, 811 F.3d 801, 808-09 (6th Cir. 2016) (citation omitted).  Examples of procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, [and] failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  *Gall v. United States*, 552 U.S. 38, 51 (2007).  When a defendant fails to raise a procedural challenge at the sentencing hearing, this court reviews the challenge for plain error, which requires the defendant to show "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings."  *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks and citation omitted).

Williams argues that the district court improperly relied on his refusal to tell the police where the other firearms were located.  Because he did not raise this challenge at his sentencing hearing when the district court asked the *Bostic* question, plain-error review applies.  *See United*

*States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004). Williams notes that he hinted at where the other guns were located by suggesting that police obtain search warrants for his grandfather's residence and his child's mother's residence. He also asserts that the district court improperly disregarded his explanation that the other firearms belonged to his deceased brother and mistakenly characterized his explanation as stating that the guns belonged to his friend. Finally, he argues that his refusal to disclose the location of the firearms was protected by his Fifth Amendment right against self-incrimination.

First, Williams not only failed to disclose the location of the other firearms, but also made contradictory statements about them. Although he suggested that law enforcement obtain search warrants for two specific residences, he stated at other times that he had no other guns and that the other guns were "buried far away." (R. 28, PID 82). Additionally, even if the guns truly belonged to Williams's deceased brother, that would not foreclose the possibility of Williams having access to the guns, which in turn affects the likelihood of Williams recidivating and the need to protect the public from further crimes, which are proper sentencing considerations. *See* 18 U.S.C. § 3553(a). And the district court's misstatement that Williams claimed the guns belonged to his friend, rather than his brother, is irrelevant to these considerations. Additionally, Williams's argument regarding self-incrimination fails because he never invoked the privilege against self-incrimination. *See Salinas v. Texas*, 570 U.S. 178, 183 (2013) ("[W]e have long held that a witness who desires the protection of the privilege . . . must claim it at the time he relies on it." (internal quotation marks and citation omitted)); *Roberts v. United States*, 445 U.S. 552, 560 (1980) (rejecting a self-incrimination argument because "if petitioner believed that his failure to cooperate was privileged, he should have said so at a time when the sentencing court could have determined whether his claim was legitimate").

Accordingly, the district court did not commit plain error in relying on Williams's refusal to disclose where the other firearms were located.

**III.**

"A claim that a sentence is substantively unreasonable is a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). We review a challenge to the substantive reasonableness of a sentence under an abuse-of-discretion standard. *See United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022). A sentence is substantively unreasonable if the sentencing court "select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent [] factors, or giv[es] an unreasonable amount of weight to any pertinent factor." *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (citation omitted).

"A district court is well within its discretion to vary from the advisory Guidelines when [it] finds a particular case falls outside the heartland or mine-run of cases to which the Commission intends individual Guidelines to apply." *United States v. Milliron*, 984 F.3d 1188, 1198 (6th Cir. 2021) (internal quotation marks and alterations omitted). "But a variance in a mine-run case warrants closer review of the district court's justifications." *Id.* (internal quotation marks omitted).

Williams contends that his criminal history does not support the upward variance the district court applied. He asserts that the base offense level the sentencing guidelines provided accounts for his prior felony conviction for a crime of violence—an armed-robbery conviction from 17 years earlier. Williams also notes that although he had previously been convicted of unlawful use of a weapon and being a felon in possession of a firearm, neither conviction resulted from an act of violence. Rather, both convictions resulted from Williams possessing a firearm and

fleeing when the police approached. Thus, he argues, his is a mine-run case that warrants closer review of the decision to apply an upward variance.

This court has "consistently rejected defendants' arguments that a district court cannot impose upward variances based on criminal history, simply because the guidelines calculation already accounts for criminal history as a factor." *United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020). And regardless whether this case is a mine-run case, Williams's statements to police that he had "lots more" guns and that he was skilled at obtaining guns without being caught by police (R. 28, PID 82) support the district court's reasoning that an upward variance was needed to protect the public and deter Williams from committing additional crimes.

For these reasons, Williams's arguments regarding his criminal history fail to demonstrate that the district court abused its discretion in applying an upward variance.

* * *

For the foregoing reasons, we AFFIRM.