NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0148n.06

Case No. 25-3351

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 20, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO AT CLEVELAND |
| LARRY KEITH GILDERSLEEVE, III, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: BOGGS, SILER, and KETHLEDGE, Circuit Judges.

**SILER, Circuit Judge.** Defendant Larry Keith Gildersleeve appeals the procedural and substantive reasonableness of his criminal sentence. We **AFFIRM**.

**I.      Background**

In 2011, Gildersleeve purchased Progressive Alternatives, a company providing care services to the developmentally disabled. Following the purchase, Gildersleeve made the business a sole proprietorship under his name. As with such businesses, Progressive Alternatives had to pay federal employment taxes, both on its own behalf and by deducting and paying over its employees' taxes. But the company failed to pay such taxes from the beginning of Gildersleeve's ownership in 2011 until it closed in 2019.

Beyond failing to pay business taxes, money flowed freely from Progressive Alternatives' operating account to personal accounts held by Gildersleeve and his husband. And the net transfers were substantial: 2015: $188,000, 2016: $283,000, 2017: $284,000, 2018: $339,000, 2019:

$155,000. Notably, neither Gildersleeve nor his husband filed personal federal income-tax returns for the money received from the business.

In addition, the couple made personal purchases using funds directly from the business account. These personal expenditures included credit card payments ($91,385), cash withdrawals ($65,585), rent for their joint residence ($61,300), family trips ($21,982), and Sam's Club ($19,231).

Between December 2017 and September 2019, Progressive Alternatives failed to pay a total of $692,697.50 in quarterly taxes, in violation of 26 U.S.C. § 7202. The total tax loss, reflecting both employee and employer portions from 2011 to 2019, was $2,616,354.

The government charged Gildersleeve by information on eight counts of failure to account for and pay over taxes. Gildersleeve later pled guilty to the offenses.

At sentencing, the district court agreed with the parties' calculation of Gildersleeve's base offense level and accepted the offense-level reductions recommended in his plea agreement. The district court then accepted an additional four-level, downward departure based on Gildersleeve's substantial assistance in a government investigation, resulting in a total offense level of 13 and a sentence range of 12 to 18 months.

After the parties' arguments and Gildersleeve's allocution, the district court began its sentencing determination by stating that it had "carefully considered the matter, [and] reviewed the nature and circumstances of the offense." On this point, the district court had already observed that "the money coming to the personal accounts was . . . substantial[,]" that Gildersleeve spent "lots of [business] money" on personal luxuries, and that Gildersleeve failed to pay income taxes on the monies received from the business between 2015 and 2019. But the court acknowledged

that Gildersleeve had experienced a financially challenging childhood. It also recognized that Gildersleeve's daughter suffered from autism and required parental care.

Following its analysis, the district court concluded that "[e]ighteen months is not sufficient, . . . not given the length of time this went on, not given . . . the way the monies were spent, the waste, the complete ignoring his obligation to both income tax and otherwise." So, the district court varied Gildersleeve's sentence "two levels from the 13 to offense level 15." And the court determined that a sentence of twenty-four months was reasonable due to "the nature of this conduct[.]"

Upon announcing Gildersleeve's sentence, the district court asked whether the parties had "any objection[s], corrections, [or] arguments not previously raised." The parties offered none.

After sentencing, the district court issued a "Statement of Reasons," finding that additional punishment was necessary "[t]o reflect the seriousness of the offense . . .[,] [t]o afford adequate deterrence . . .[, and t]o protect the public from further crimes of the defendant[.]" The district court subsequently issued a judgment reflecting its sentencing pronouncement, and Gildersleeve timely filed his notice of appeal.

## II.      Standard of Review

When a defendant fails to raise a procedural challenge at the sentencing hearing—as Gildersleeve failed to do here—this court reviews the challenge for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). With or without an objection, we review a challenge to the substantive reasonableness of a sentence under an abuse-of-discretion standard. *See United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022). Under that standard, this court reviews the district court's legal conclusions de novo and its findings of fact for clear error. *Id.* (citing *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010).

## III.     Discussion

### A.     Procedural Reasonableness

Gildersleeve first claims that the upward variance was procedurally unreasonable because the district court did not give notice that it was considering a variance. In response, the government argues that the district court did not commit plain error because it was not required to give notice of a potential upward variance.

We review procedural reasonableness claims to ensure that the sentencing judge "set forth enough to satisfy the appellate court that [the sentencing judge] has considered the parties' arguments and has a reasoned basis for exercising his own legal decision[-]making authority." *United States v. Nunley*, 29 F. 4th 824, 833 (6th Cir. 2022).

Gildersleeve's procedural argument is unconvincing. In *Irizarry v. United States*, the United States Supreme Court held that a district court is not required to give notice of its intent to impose a variance. 553 U.S. 708, 714–16 (2008). Indeed, the Court observed that "[s]entencing is 'a fluid and dynamic process and the court itself may not know until the end whether a variance will be adopted, let alone on what grounds.'" *Id.* at 715 (quoting *United States v. Vega–Santiago*, 519 F.3d 1, 4 (1st Cir. 2008) (en banc)). And despite Gildersleeve's insistence, his case is unlike *United States v. Coppenger*, where the district court improperly imposed a variance based on "extraneous" information—information that the defendant could not have accessed or anticipated. 775 F.3d 799, 804–05 (6th Cir. 2015). The district court here relied on facts contained in the presentence report. So, Gildersleeve has not established plain procedural error.

## B.      Substantive Reasonableness

Gildersleeve next raises several arguments to attempt to show that his sentence is substantively unreasonable.  The government counters that the district court reasonably weighed the § 3553(a) factors and imposed a sentence that reflected the circumstances of the offense.

A sentence is substantively unreasonable if it is arbitrary, based on impermissible factors, or fails to consider or properly weigh any of the relevant 18 U.S.C. § 3553(a) factors.  *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007).  A within-Guidelines sentence is presumed reasonable, but a sentence outside the Guidelines is not necessarily presumptively *unreasonable*. *Id*.  Moreover, judges may vary from the Guidelines range, but must justify such a variance by reference to the § 3553(a) factors. *United States v. Demma*, 948 F.3d 722, 728–29 (6th Cir. 2020). Such reference may be implicit rather than explicit, and the district court need not engage in a "ritualistic one-by-one incantation of each factor." *United States v. Coleman*, 835 F.3d 606, 616 (6th Cir. 2016) (internal quotation marks omitted).

At sentencing, the district court weighed the § 3553(a) factors.  Addressing the nature and circumstances of the offense, the district court emphasized that (1) Gildersleeve transferred business funds to his personal account, (2) he failed to pay individual income taxes on the transferred funds, (3) he spent large sums on personal luxuries using a business account, and (4) Gildersleeve's conduct continued for many years.  The district court also addressed Gildersleeve's history and characteristics by observing that Gildersleeve suffered financial difficulties in childhood and that his daughter required parental care.  And the court noted the seriousness of the offense, deterrence, and public safety concerns in its Statement of Reasons.

The district court reasonably weighed the relevant § 3553(a) factors.  On this point, the record supports the finding that the nature of the offense was severe, especially given that

Gildersleeve continued his crimes for nearly a decade. The district court also expressed appropriate concern regarding Gildersleeve's self-dealing with business funds, his failure to pay income taxes on those funds, and his extravagant consumer spending using the funds. So, the district court did not abuse its discretion in weighing the § 3553(a) factors.

Despite the above, Gildersleeve first contends that his sentence is too long because of his low odds of recidivism. Gildersleeve then asserts that, like the defendant in *United States v. Perez-Rodriguez*, 960 F.3d 748 (6th Cir. 2020), he did not "exhibit an extensive pattern of criminal activity, or an ongoing risk of harm to the public." Next, Gildersleeve believes that the district court did not sufficiently distinguish his case from cases involving similar crimes. Relatedly, Gildersleeve maintains that the guidelines range adequately accounted for his conduct.

Gildersleeve's arguments do not carry water. His chance of recidivism is not a relevant consideration in the circumstances of this case. Moreover, because Gildersleeve engaged in a pattern of criminal activity by repeatedly failing to pay taxes, he is unlike the defendant in *Perez-Rodriguez*, who reentered the United States illegally only once. 960 F.3d at 756. Likewise, the duration of his criminal conduct distinguishes Gildersleeve's case from others involving the same type of crime. Finally, the broader context of his conduct—self-dealing with business funds, failure to pay personal income taxes on those funds, extravagant consumer spending using the business funds, and the duration of his conduct—supports finding that the sentencing guidelines range did not adequately account for his acts. Therefore, because Gildersleeve has not established an abuse of discretion, his substantive reasonableness claim fails.

## IV.    Conclusion

For the above reasons, we **AFFIRM** the judgment of the district court.

6